|  |  |
|---|---|
|  | IN THE CIRCUIT COURT, FOURTH JUDICIAL CIRCUIT, IN AND FOR DUVAL COUNTY, FLORIDA |
| RAY AND LYNNE PERNSTEINER, individually and as Personal Representatives or the Estate of Julia Pernsteiner, deceased, | CASE NO.: 16-2023-CA-000719-XXXX-MA<br>DIVISION:  CV-H |
| Plaintiffs, |  |
| vs. |  |
| JACKSONVILLE UNIVERSITY, a Florida Corporation, and RONALD E. GRIGG, JR., |  |
| Defendants.<br>_____/ |  |

## AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL
*(Amended for correction to paragraph 62 only)*

Plaintiffs, RAY AND LYNNE PERNSTEINER, individually and as Personal Representatives or the Estate of Julia Pernsteiner, deceased, by and through their undersigned attorneys sue Defendants, JACKSONVILLE UNIVERSITY, a Florida Corporation, and RONALD E. GRIGG, JR., and allege as follows:

### INTRODUCTION

1. This is a lawsuit brought under the following laws:

    a. Florida Wrongful Death Statute 768.16 et seq.;

    b. Florida Survival Action Statute 46.021;

    c. Americans with Disabilities Act ("ADA") 42 U.S.C. 12182 et seq.;

    d. Section 504 of the Rehabilitation Act of 1973, 29 U.S.C 794(a) et seq.;

    e. Title IX of the Education Amendments of 1972 (Title IX);

    f. Florida law regarding breach of contract; and

      g.      Florida law regarding intentional infliction of emotional distress.

## THE PARTIES

2.      Plaintiffs, Ray and Lynne Pernsteiner, are residents of Eagan, Minnesota. They are the parents of Julia Pernsteiner, deceased. Mr. and Mrs. Pernsteiner are the personal representatives of their late daughter's estate.

3.      Defendant, Jacksonville University (hereafter "JU"), is a Florida corporation operating as a private institution of higher education located at 2800 University Blvd., North, Jacksonville, Florida.

4.      The school was founded in 1934 as a two-year college and was known as Jacksonville Junior College until 1956, when it offered four-year university degree programs and became known as Jacksonville University.

5.      JU is a Division I institution, it fields 18 varsity athletics teams, known as the JU Dolphins. In the **National Collegiate Athletic Association Division I (D-I)** is the highest level of <u>intercollegiate athletics</u> ,. D-I schools include the major collegiate athletic powers, with large budgets, more elaborate facilities and more <u>athletic scholarships</u> than other divisions. As a place of higher education, JU qualifies as a "public accommodation" under Title III of the ADA as that term is defined under 42 U.S.C. § 12181(7)(J). JU is also a recipient of federal financial assistance within the meaning of Section 504 of the Rehabilitation Act ("Section 504") and Title IX of the Education Amendments of 1972.

6.      JU boasts an office of Disability Support Services (DSS) which: "works with JU faculty and staff to ensure that reasonable accommodations are made to allow students an equal opportunity to learn in the classroom and to have access to all areas of the JU campus." (JU Website)

7. Defendant, Ronald E. Grigg, Jr. (also known as Ron Grigg), is a resident of Duval County Florida. Grigg was employed as Director of Track and Field and Cross-country teams at JU from 1998 until his sudden resignation was announced in July, 2022.

8. Julia Claire Pernsteiner was born in 1998 and died by suicide in her dorm room at JU on November 8, 2021. She was 23 years of age at the time of her death.



9. Julia was a twin and middle child of four children in the Pernsteiner family. From her earliest years she was outgoing, vivacious, warm, athletic and a loyal friend. She was known and loved by family, friends and teammates for her energy, independence and confidence.

10. Julia suffered from ADHD and severe dyslexia, dysgraphia and dyscalculia. These are learning disabilities affecting reading, writing, spelling and arithmetic skills.

11. Julia had a measured Full Scale IQ of 84 and was emotionally young for her chronological age.

12. As a result of her learning disabilities, Julia had an Individualized Education Plan or IEP from an early age. An IEP is developed to ensure that a student with identified disabilities

receives specialized instruction and related services while attending an educational institution. Julia's IEP was developed by a team of professionals from various educational disciplines, as well as, input and information from Julia and her parents.

13. According to Julia's IEP, dated October 2016, she had difficulties with processing information, short and long term memory deficits and "very low skills in reading, writing and math."

14. The IEP evaluation team noted that Julia "did not want to be looked upon as different" and as a result was "socially and emotionally guarded". Pursuant to the IEP, Julia needed and was entitled to, special accommodations and modifications including:

- Seating in the front of classrooms
- Examinations read aloud to her
- Study guides for tests
- Extended times for tests, essays and assignments
- Notes to be provided by teachers
- Assistive technology including speech to text technology
- Other accommodations

15. As a result of strict adherence to the requirements of Julia's IEP, she graduated from Rosemount High School and then attended classes at the University of Pikeville in Kentucky.

16. Due to her diagnosed learning challenges as outlined above, Julia Pernsteiner was recognized as a "student with disabilities" as that term is defined by the ADA, Title IX, Section 504 of the Rehabilitation Act and by Defendant JU.

17. Julia was an avid runner and competed on the women's cross-country teams in high school and at the University of Pikeville. She bonded with her all teammates and loved the

camaraderie of belonging to a team. Her athletic activities helped her manage and cope with her learning disabilities.



### ACCEPTANCE AT JACKSONVILLE UNIVERSITY

18. In late 2020 Julia was recruited by Defendant Grigg to run cross-country for the JU Dolphins. Julia was accepted by the school for the Spring 2021 semester and was told that:

> "Your remarkable application and accomplishments show that you have the intellectual energy, creativity and talent to flourish here…out of several thousand applicants, you stood out to us because we saw the same innovation, drive and tenacity for success that we see in our current students….Jacksonville University is invested in you."[1]

---

[1] Julia's Letter of Acceptance to Jacksonville University

19. Julia was thrilled and excited to begin a new chapter in her life in what she was led to believe would be a welcoming, understanding and supportive community.

20. After reviewing Julia's application, IEP and application for assistance with the Department of Disability Support Services, the school identified Julia as qualifying for reasonable accommodations under the Americans with Disabilities Act and Section 504 of the Rehabilitation Act of 1973.

21. JU entered into a contractual agreement with Julia to provide necessary accommodations and services.

22. On February 9, 2021, the Director of Disability Support Services issued a Memorandum to Julia's professors (Exhibit A). The memorandum instructs the faculty that Julia was to receive reasonable accommodations including extended time for exams and assignments, assistive technology (calculators, speech-text-speech software, etc.), professors' notes, a reader and a scribe.[2]

23. These requested accommodations were renewed for the Fall 2021 Semester in a Confidential Memorandum dated August 25, 2021 (Exhibit B).

24. Mr. and Mrs. Pernsteiner were excited for their daughter's new opportunity but apprehensive that her intellectual challenges might not be fully addressed. With Julia's permission her parents spoke with the administration and they were promised by JU that they would be kept closely advised of Julia's progress and any problems or issues that might arise.

25. Despite her challenges, Julia's verbal skills were excellent and with the assistance of autocorrect and similar software programs, her writing in emails and text messages presented

---

[2] Exhibits A and B have been designated as "confidential" by counsel for JU and will be filed under seal at a later date.

as mainstream. However, without a reader, scribe, and software programs to assist her, Julia could not read, understand, take notes or complete assignments. For example, a page of her log contains multiple spelling, grammar and word choice errors:



26.     Defendant Jacksonville University failed and refused to comply with the Individualized Education Plan, the Request for Accommodations, the Confidential Memorandum, and the promise to the family to advise of any problems.  JU failed to provide Julia with necessary accommodations including, failure to provide a scribe, reader, professors' notes, and assistive technology.

27.     Defendant JU failed to keep Julia's parents advised of her academic issues. Julia depended on tutoring help from the Academic Support Center on campus. When Julia enrolled in

classes for the Summer of 2021 Defendant JU failed to advise Julia or her parents that there was no Academic Support Center during the Summer Term.

28. As a consequence of JU's failure to provide the promised and agreed upon reasonable accommodations, Julia was unable to complete assignments and examinations and her grades dropped.

29. Julia became depressed about her lack of academic support and attempted to drop her Summer 2021 courses but JU refused.

## CROSS-COUNTRY TEAM

30. Immediately after enrolling at JU, Julia had begun training with the women's cross-country track team then coached by Defendant Grigg.

31. Grigg's actions and conduct described below occurred in the course and scope of his employment with Defendant JU.

32. As a coach, Defendant Grigg was oppressive, threatening, bullying, condescending and demeaning to many of the young women on the team.

33. He created a toxic atmosphere of humiliation and intimidation by belittling, disparaging and ridiculing runners who did not meet his standards.

34. Grigg believed, incorrectly, that there was a direct correlation between a runner's weight and athletic ability. Accordingly, he 'fat shamed" women runners by mocking them as members of a "fat club".  He conducted weekly weigh-ins using a "bod pod" and demanding a BMI (body mass index) of 10%, or less.  This is an unrealistic and unhealthy BMI. All of which prompted eating disorders in certain young, impressionable women on the team.

35. Julia loved running and bonded with her teammates, but she was not an elite athlete. As a result, she was often the recipient of Grigg's malicious, humiliating and demeaning comments, text messages and emails.[3]

36. Teammates recall Grigg taking a special satisfaction in humiliating Julia referring to her as "retarded" "the slowest f…ing runner on the team" and unable to "wipe your own a.." Julia, already struggling academically, now found that the sport she loved and found comfort in, was the source of her coach's targeted ridicule and harassment.

37. Julia and others on the team reached out, unsuccessfully, to the JU Athletic Director, trainers, and the administration to report Grigg's conduct.

38. When confronted with these allegations of misconduct and violations of Title IX, Section 504 and the ADA, the school closed ranks around Grigg and refused to take any action.

39. JU staff and administration including the Athletic Director, Alex Ricker-Gilbert, the Title IX Coordinator, Kristi Gover among others, were aware of Grigg's malicious and illegal conduct. Due, however, to his success as a track coach JU ignored his misconduct. As long as Grigg's teams were competitive, JU tolerated his outrageous behavior towards team members.

## CORROBORATING STATEMENTS FROM TEAM MEMBERS

40. When no help from JU was forthcoming, Julia contacted current and former teammates to learn about their experiences with Grigg. In addition to the fat shaming and ridiculing, she learned that Grigg made inappropriate sexual comments and gestures to certain girls on the team.

> One runner reported: "I witnessed him (Grigg) treat another teammate awfully, he would make jokes about her behind her back about her mental health, he would say that she was 'useless', that there was something wrong and it seemed like he kept

---

[3] Investigators learned that Grigg has erased all text messages regarding Julia.

her around for his entertainment…I was not allowed to mess up otherwise he would take my scholarship away."

One former teammate recalls "Grigg had an affinity for picking one or two people out each year to bully…it was cruel and mean…especially coming from a grown man in a position of authority"

Another former runner remembers: "When Julia reached out to me I knew exactly what she was feeling because I had been her just a few years earlier. I felt like the school had failed us."

Yet another runner recalls: "He instigated bullying on the team and created a toxic dynamic…this led to depression, feeling worthless and unwanted so much so that I gave up my athletic scholarship and transferred to a university closer to home."

41. Team members were not alone in observing Grigg's humiliating conduct. A graduate student who volunteered as an assistant coach for the team reports: "Grigg created a hostile environment on the team but his hostility was heightened with Julia… she wanted advice but all she got was humiliation. Grigg made me feel like an object saying ' you should come over to my place for drinks, but don't accuse me of that Me Too S..t' …and 'you look great in those shorts, if only you were not a student'.  I don't know how this went on so long, I reported him to the school twice, but nothing was done.  Grigg was a monster."

42. Grigg dismissed Julia from the cross-country team in September, 2021.

43. After leaving the team, Julia continued to reach out for help to JU staff. On October 18, 2021 she contacted the JU Athletic Director Alex Ricker-Gilbert:

> Monday, October 18, 2021 12:32 PM
> **To:** Ricker-Gilbert, Alex <aricker1@ju.edu>
> **Subject:** Academic eligibility
>
> Hello -
>
> I hope you're having a good morning. I was more than heartbroken to learn that I am no longer able to be on the track team, because my GPA is too low and I'm not fast enough to compete at this level. My coach knew my times when he recruited me to come to JU and he knew about my grades at UPike. I am not the slowest one on the team. I understand that he thinks that I'm not learning and that I can be

difficult to work with. I have learning disabilities and due to that disability have a hard time following directions. I show up to practice every day on time with a smile. I help my teammates when they need. At the end of the day I understand I'm not going to be a big point scorer but I have improved and everyone has a role-play on a team. I'm a walk-on so its not about the money. I just don't know where to go from here. I rely on the athletic academic help to do well. I would like to stay and work on improving my grades. I just am not able to do it myself. I'm looking for advice on how to proceed.

Sincerely,
Julia

44. When her pleas for help went unanswered Julia's frustration spiraled into desperation and depression. She turned to social services at Mayo Clinic, the Safe Sport Helpline and the Women's Center for help.

45. On November 8, 2021 Julia committed suicide in her dorm room.

46. Following Julia Pernsteiner's death, JU announced it was conducting an investigation into the conduct of Grigg. In a December, 2021 letter from President Tim Cost and Dean Kristi Gover, the Pernsteiners were promised they would receive the outcome of the investigation. However, despite multiple requests, the report was never provided to the family until they engaged counsel.

47. In July, 2022 it was announced that Grigg was "no longer an employee of Jacksonville University" the announcement continued: "All of our coaches and staff also will complete additional mandatory training involving mental health issues…including ..body image, nutrition, bullying, and building a healthy, supportive team culture."[4]

### COUNT ONE NEGLIGENCE CLAIM AGAINST JU
### FOR JULIA PERNSTEINER'S WRONGFUL DEATH

Plaintiffs reallege paragraphs 1- 47 and further state:

---

[4] A message from the Athletic Director July 9, 2022

48. This claim is brought pursuant to the Florida Wrongful Death Statute 768.16 et seq.

49. At all times material Defendant JU owed a duty to Julia Pernsteiner to act reasonably in providing academic and athletic resources.

50. Defendant JU negligently failed to provide the necessary academic and athletic resources to Julia.

51. Defendant JU negligently failed to properly supervise its employee Defendant Grigg in his conduct as athletic coach.

52. Defendant JU negligently failed to provide the promised reasonable academic accommodations to Julia.

53. As a direct and proximate result of the negligence of JU as aforesaid Julia Pernsteiner fell into depression and took her own life.

54. Plaintiffs Ray and Lynne Pernsteiner have been deprived of the love, affection, comfort and companionship of their beloved daughter.

55. The Estate of Julia Pernsteiner has lost the net accumulations she would have earned over her lifetime and has incurred funeral expenses.

Wherefore, Plaintiffs demand judgment against Defendant JU for damages, costs and trial by jury.

### COUNT II SURVIVAL ACTION AGAINST JU FOR JULIA PERNSTEINER'S PAIN AND SUFFERING PRIOR TO HER DEATH

Plaintiffs reallege paragraphs 1- 47 and further state:

56. This claim is brought pursuant to the Florida Survival Action Statute 46.021.

57. At all times material, Defendant JU owed a duty to Julia Pernsteiner to act reasonably in providing academic and athletic resources.

58. Defendant JU negligently failed to provide the necessary academic and athletic resources to Julia.

59. Defendant JU negligently failed to properly supervise its employee Defendant Grigg in his conduct as athletic coach.

60. Defendant JU negligently failed to provide the promised reasonable academic accommodations to Julia

61. As a direct and proximate result of the negligence of JU as aforesaid, Julia Pernsteiner was harassed, intimidated, bullied and humiliated by Defendant Grigg while he was acting as an employee of Defendant JU.

62. For 10 months prior to her death Julia suffered pain, mental anguish, panic attacks, fear and depression.

Wherefore, Plaintiffs demand judgment against Defendant JU for damages, costs and trial by jury.

## COUNT III BREACH OF WRITTEN CONTRACT AGAINST JU

Plaintiffs reallege paragraphs 1- 47 and further state:

63. Plaintiffs and Defendant JU entered into written agreements (Exhibits A and B).

64. Pursuant to the terms of the agreements, JU agreed to provide Julia Pernsteiner with reasonable and necessary accommodations for her academic success at the university.

65. Consideration for the provision of those services was the agreement of plaintiffs to pay the university tens of thousands of dollars in tuition, room and board, books and other charges.

66. Plaintiffs paid the tuition and other expenses as they were invoiced and all other conditions precedent have occurred or been waived.

67. Defendant JU breached the agreement and failed and refused to provide the promised and necessary accommodations to Julia when requested.

68. As a direct and proximate result of JU's breach of contract Plaintiffs have sustained compensatory and special damages.

Wherefore, Plaintiffs demand judgment against Defendant JU for compensatory damages, special damages, costs and trial by jury.

### COUNT IV  INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST DEFENDANT GRIGG

Plaintiffs reallege paragraphs 1- 47 and further state:

69. At all times material Defendant Grigg was fully aware of the fact that Julia Pernsteiner suffered from a disability as that term is defined in the ADA, Title IX and 504 of the Rehabilitation Act.

70. He was aware that she suffered from ADHD, and a number of learning issues and struggled to complete academic assignments.

71. He was aware that she was emotionally immature and had limited coping skills.

72. He was aware that she loved the sport of cross-country and the camaraderie of her teammates.

73. He was aware that Julia struggled with weight loss and was unable to meet Grigg's expectations for her body mass index.

74. Notwithstanding his knowledge of Julia's difficulties, Defendant Grigg berated and humiliated her to her face and behind her back to teammates.

75. He attacked her about her weight, her learning disabilities, her performance as a runner and her relationships with teammates.

76. His attacks were extreme, outrageous, intentional and reckless.

77. His attacks were designed and intended to cause severe emotional distress to Julia and to force her off the women's cross-country team.

78. As a direct and proximate result of the conduct of Defendant Grigg, Julia Pernsteiner suffered depression, anxiety, stress and suicidal ideation.

Wherefore, Plaintiffs demand judgment against Defendant Grigg for compensatory damages, punitive damages, costs and trial by jury.

### COUNT V RESPONDEAT SUPERIOR LIABILITY OF JU FOR THE INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS INFLICTED BY ITS EMPLOYEE DEFENDANT GRIGG

Plaintiffs reallege paragraphs 1 - 47 and the preceding count and further state:

79. At all times material, Defendant Grigg was an employee of Defendant JU acting in the course and scope of his duties as athletic coach for the school.

80. For years prior to the enrollment of Julia Pernsteiner, the administration of JU was made aware of complaints about Grigg and his conduct toward women athletes

81. Specifically, the administration and the athletic department received reports that Grigg would intentionally and with malice, humiliate, berate and harass women on his teams.

82. The JU administration knew, or should have known that Grigg's conduct was a violation of Title IX, and Section 504 of the Rehabilitation Act.

83. Notwithstanding that knowledge, JU administration negligently failed to properly manage and supervise the conduct of its employee.

84. Despite knowledge of Grigg's outrageous and illegal behavior toward women on his teams, JU acquiesced and condoned that conduct as long as Grigg was coaching winning teams.

85. Defendant JU's condoning of Grigg's conduct included his intentional infliction of emotional distress directed toward Julia Pernsteiner as alleged above.

86. As a direct and proximate result of the actions of JU as aforesaid, Julia Pernsteiner suffered severe anxiety, depression, fear and suicidal ideation.

Wherefore, Plaintiffs demand compensatory damages, punitive damages, costs and trial by jury.

**COUNT VI CLAIMS AGAINST DEFENDANT JU
FOR VIOLATIONS OF TITLE IX**

Plaintiffs reallege paragraphs 1- 47 and further state:

87. This claim is brought pursuant to Title IX of the Education Amendments of 1972, 20 U.S.C. sec 1681 et seq., and under Florida law.

88. At all times material, Julia Pernsteiner was a person protected by the provisions of Title IX of the Education Amendments of 1972.

89. Based on the allegations above, Plaintiffs assert that Defendant JU deprived their daughter of rights and privileges guaranteed by Title IX, causing her injury.

Wherefore, Plaintiffs demand a declaratory judgement pursuant to 28 U.S.C. Sec 2201 and 2202 declaring that the Defendant JU has been conducting athletic programs which discriminate against young women on the basis of sex thereby depriving them of rights, privileges and immunities secured to them by the fourteenth amendment to the United States Constitution and Article I Sec 2 of the Florida Constitution.  That the court issue preliminary and final injunctive relief enjoining Defendant JU from further discrimination on the basis of sex.  Award Plaintiffs compensatory damages and costs and attorney's fees.

**COUNT VII CLAIMS AGAINST DEFENDANT JU FOR VIOLATION
OF THE AMERICANS WITH DISABILITY ACT**

Plaintiffs reallege paragraphs 1- 47 and further state:

90. This is a claim brought pursuant to The American with Disability Act 42 U.S.C. 12182 et seq.

91. The ADA is a civil rights law to prohibit discrimination solely on the basis of disability.

92. At all times material, Julia Pernsteiner was a person protected by the provisions of the ADA by reason of her learning disabilities described above.

93. Based on the allegations above, Plaintiffs assert that Defendant JU deprived their daughter of rights and privileges guaranteed by the ADA, causing her injury.

Wherefore, Plaintiffs demand a declaratory judgment declaring that Defendant JU discriminated against their daughter in violation of the ADA, enjoin JU from any further discriminatory conduct directed toward other students, and award Plaintiffs compensatory damages, costs and attorney's fees.

### COUNT VIII  CLAIMS AGAINST DEFENDANT JU FOR VIOLATION OF SECTION 504 OF THE REHABILITATION ACT OF 1973 AS AMENDED 29 U.S.C. SEC 794

Plaintiffs reallege paragraphs 1- 47 and further state:

94. This is a claim brought pursuant to section 504 of the rehabilitation act of 1973 as amended 29 U.S.C. Section 794 hereafter referred to as "section 504".

95. Section 504 is a civil rights law to prohibit discrimination on the basis of disability in programs and activities, public and private, that receive federal financial assistance.

96. At all times material, Julia Pernsteiner was a person protected by the provisions of section 504 by reason of her learning disabilities described above.

97. Based on the allegations above, Plaintiffs assert that Defendant JU deprived their daughter of rights and privileges guaranteed by section 504 causing her injury.

98. The conduct of the administration, staff and coaches at JU demonstrates either an intentional or bad faith discrimination against a student with learning disabilities.

Wherefore, Plaintiffs demand a declaratory judgment declaring that Defendant JU discriminated against their daughter in violation of section 504, enjoin JU from any further discriminatory conduct directed toward other students, and award Plaintiffs compensatory damages, punitive damages, costs and attorney's fees.

### DEMAND FOR TRIAL BY JURY

Plaintiffs demand a trial by jury for all issues so triable.

DATED:   March 2, 2023

                        SPOHRER & DODD, P.L.

                         */s/ Robert F. Spohrer.*
                        Robert F. Spohrer, Esquire
                        Florida Bar No.: 184500
                        76 S. Laura Street, Suite 1701
                        Jacksonville, FL  32202
                        Telephone: (904) 309-6500
                        Facsimile: (904) 309-6501
                        Email:  rspohrer@sdlitigation.com
                        Secondary Email:  jheape@sdlitigation.com
                                            eService@sdlitigation.com
                        *Attorney for Plaintiffs*