**FORM 1.997.    CIVIL COVER SHEET**

The civil cover sheet and the information contained in it neither replace nor supplement the filing and service of pleadings or other documents as required by law. This form must be filed by the plaintiff or petitioner with the Clerk of Court for the purpose of reporting uniform data pursuant to section 25.075, Florida Statutes. (See instructions for completion.)

---

### I.    CASE STYLE

IN THE CIRCUIT/COUNTY COURT OF THE <u>FOURTH</u>   JUDICIAL CIRCUIT,
IN AND FOR <u>DUVAL</u>   COUNTY, FLORIDA

<u>Ray Pernsteiner, Lynne Pernsteiner</u>
Plaintiff                                                    Case # _____
                                                             Judge  _____

vs.

<u>Jacksonville University, Ronald E Grigg Jr</u>
 Defendant

---

### II.    AMOUNT OF CLAIM

Please indicate the estimated amount of the claim, rounded to the nearest dollar. The estimated amount of the claim is requested for data collection and clerical processing purposes only. The amount of the claim shall not be used for any other purpose.

☐  $8,000 or less
☐  $8,001 - $30,000
☐  $30,001- $50,000
☐  $50,001- $75,000
☐  $75,001 - $100,000
☒  over $100,000.00

### III.    TYPE OF CASE     (If the case fits more than one type of case,   select the most definitive category.) If the most descriptive label is a subcategory (is indented under a broader category), place an x on both the main category and subcategory lines.

ACCEPTED: DUVAL COUNTY, JODY PHILLIPS, CLERK, 02/03/2023 03:07:03 PM

**CIRCUIT CIVIL**

☐ Condominium
☐ Contracts and indebtedness
☐ Eminent domain
☐ Auto negligence
☒ Negligence—other
  ☐ Business governance
  ☐ Business torts
  ☐ Environmental/Toxic tort
  ☐ Third party indemnification
  ☐ Construction defect
  ☐ Mass tort
  ☐ Negligent security
  ☐ Nursing home negligence
  ☐ Premises liability—commercial
  ☐ Premises liability—residential
☐ Products liability
☐ Real Property/Mortgage foreclosure
  ☐ Commercial foreclosure
  ☐ Homestead residential foreclosure
  ☐ Non-homestead residential foreclosure
  ☐ Other real property actions

☐Professional malpractice
  ☐ Malpractice—business
  ☐ Malpractice—medical
  ☐ Malpractice—other professional
☐ Other
  ☐ Antitrust/Trade regulation
  ☐ Business transactions
  ☐ Constitutional challenge—statute or ordinance
  ☐ Constitutional challenge—proposed amendment
  ☐ Corporate trusts
  ☐ Discrimination—employment or other
  ☐ Insurance claims
  ☐ Intellectual property
  ☐ Libel/Slander
  ☐ Shareholder derivative action
  ☐ Securities litigation
  ☐ Trade secrets
  ☐ Trust litigation

**COUNTY CIVIL**

☐ Small Claims up to $8,000
☐ Civil
☐ Real property/Mortgage foreclosure

☐ Replevins
☐ Evictions
    ☐ Residential Evictions
    ☐ Non-residential Evictions
☐ Other civil (non-monetary)

**COMPLEX BUSINESS COURT**

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order.  Yes ☐ No ☒

**IV.    REMEDIES SOUGHT** (check all that apply):
☒ Monetary;
☐ Nonmonetary declaratory or injunctive relief;
☐ Punitive

**V.    NUMBER OF CAUSES OF ACTION:** [  ]
(Specify)

  <u>8</u>

**VI.    IS THIS CASE A CLASS ACTION LAWSUIT?**
    ☐ yes
    ☒ no

**VII.    HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
    ☒ no
    ☐ yes If "yes," list all related cases by name, case number, and court.

**VIII.    IS JURY TRIAL DEMANDED IN COMPLAINT?**
    ☒ yes
    ☐ no

**IX.    DOES THIS CASE INVOLVE ALLEGATIONS OF SEXUAL ABUSE?**
    ☐ yes
    ☒ no

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief, and that I have read and will comply with the requirements of Florida Rule of Judicial Administration 2.425.

Signature: <u>s/ Robert F Spohrer</u>        Fla. Bar # <u>184500</u>
        Attorney or party               (Bar # if attorney)

<u>Robert F Spohrer     </u>       <u>02/03/2023</u>
  (type or print name)          Date

IN THE CIRCUIT COURT, FOURTH JUDICIAL CIRCUIT, IN AND FOR DUVAL COUNTY, FLORIDA

RAY AND LYNNE PERNSTEINER, individually and as Personal Representatives or the Estate of Julia Pernsteiner, deceased,

      Plaintiffs,

vs.

JACKSONVILLE UNIVERSITY, a Florida Corporation, and RONALD E. GRIGG, JR.,

      Defendants.

_____/

CASE NO.:

DIVISION:

## <u>COMPLAINT AND DEMAND FOR JURY TRIAL</u>

Plaintiffs, RAY AND LYNNE PERNSTEINER, individually and as Personal Representatives or the Estate of Julia Pernsteiner, deceased, by and through their undersigned attorneys sue Defendants, JACKSONVILLE UNIVERSITY, a Florida Corporation, and RONALD E. GRIGG, JR., and allege as follows:

### INTRODUCTION

1.    This is a lawsuit brought under the following laws:

    a.    Florida Wrongful Death Statute 768.16 et seq.;

    b.    Florida Survival Action Statute 46.021;

    c.    Americans with Disabilities Act ("ADA") 42 U.S.C. 12182 et seq.;

    d.    Section 504 of the Rehabilitation Act of 1973, 29 U.S.C 794(a) et seq.;

    e.    Title IX of the Education Amendments of 1972 (Title IX);

    f.    Florida law regarding breach of contract; and

g.      Florida law regarding intentional infliction of emotional distress.

## THE PARTIES

2.      Plaintiffs, Ray and Lynne Pernsteiner, are residents of Eagan, Minnesota.  They are the parents of Julia Pernsteiner, deceased.   Mr. and Mrs. Pernsteiner are the personal representatives of their late daughter's estate.

3.      Defendant, Jacksonville University (hereafter "JU"), is a Florida corporation operating as a private  institution of higher education located at 2800 University Blvd., North, Jacksonville, Florida.

4.      The school was founded in 1934 as a two-year college and was known as Jacksonville Junior College until 1956, when it offered  four-year university degree programs and became known as  Jacksonville University.

5.      JU is a  Division I institution, it fields 18 varsity athletics teams, known as the JU Dolphins. In the  **National Collegiate Athletic Association  Division I (D-I)** is the highest level of intercollegiate athletics ,.  D-I schools include the major collegiate athletic powers, with large budgets, more elaborate facilities and more athletic scholarships than  other divisions. As a place of  higher education, JU qualifies as a "public accommodation" under Title III of the ADA as that term is defined under 42 U.S.C. § 12181(7)(J).  JU  is also a recipient of federal financial assistance within the meaning of Section 504 of the Rehabilitation Act ("Section 504") and Title IX of the Education Amendments of 1972.

6.      JU boasts an  office of Disability Support Services (DSS) which: "works with JU faculty and staff to ensure that reasonable accommodations are made to allow students an equal opportunity to learn in the classroom and to have access to all areas of the JU campus." (JU Website)

7.      Defendant, Ronald E. Grigg, Jr. (also known as Ron Grigg), is a resident of Duval County Florida. Grigg was employed as Director of Track and Field and Cross-country teams at JU from 1998 until his sudden resignation was announced in July, 2022.

8.      Julia Claire Pernsteiner was born in 1998 and died by suicide in her dorm room at JU on November 8, 2021.  She was 23 years of age at the time of her death.



9.      Julia was a twin and middle child of four children in the Pernsteiner family. From her earliest years she was outgoing, vivacious, warm, athletic and a loyal friend. She was known and loved by family, friends and teammates for her energy, independence and confidence.

10.     Julia suffered from ADHD and severe dyslexia, dysgraphia and dyscalculia. These are learning disabilities affecting reading, writing, spelling and arithmetic skills.

11.     Julia had a measured Full Scale IQ of 84 and was emotionally young for her chronological age.

12.     As a result of her learning disabilities, Julia had an Individualized Education Plan or  IEP from an early age.  An IEP is developed to ensure that a student with identified disabilities

receives specialized instruction and related services while attending an educational institution. Julia's IEP was developed by a team of professionals from various educational disciplines, as well as, input and information from Julia and her parents.

13.     According to Julia's IEP, dated October 2016,  she had difficulties with processing information, short and long term memory  deficits and "very low skills in reading, writing and math."

14.     The IEP evaluation team noted that Julia "did not want to be looked upon as different" and as a result was "socially and emotionally guarded".  Pursuant to the IEP, Julia needed and was entitled to, special accommodations and modifications including:

- Seating in the front of classrooms

- Examinations read aloud to her

- Study guides for tests

- Extended times for tests, essays and assignments

- Notes to be provided by teachers

- Assistive technology including speech to text technology

- Other accommodations

15.     As a result of strict adherence to the requirements of Julia's IEP, she graduated from Rosemount High School and then attended classes at the University of Pikeville in Kentucky.

16.     Due to her diagnosed learning challenges as outlined above, Julia Pernsteiner was recognized as a "student with disabilities" as that term is defined by the ADA, Title IX, Section 504 of the Rehabilitation Act and by Defendant JU.

17.     Julia was an avid runner and competed on the women's cross-country teams in high school and at the University of Pikeville. She bonded with her all teammates and loved the

camaraderie of belonging to a team. Her athletic activities helped her manage and cope with her learning disabilities.



**ACCEPTANCE AT JACKSONVILLE UNIVERSITY**

18.     In late 2020 Julia was recruited by Defendant Grigg to run cross-country for the JU Dolphins. Julia was accepted by the school for the Spring 2021 semester and was told that:

> "Your remarkable application and accomplishments show that you have the intellectual energy, creativity and talent to flourish here…out of several thousand applicants, you stood out to us because we saw the same innovation, drive and tenacity for success that we see in our current students….Jacksonville University is invested in you."[1]

---

[1] Julia's Letter of Acceptance to Jacksonville University

19.     Julia was thrilled and excited to begin a new chapter in her life in what she was led to believe would be a welcoming, understanding and supportive community.

20.      After reviewing Julia's application, IEP and application for assistance with the Department of Disability Support Services, the school identified Julia as qualifying for reasonable accommodations under the Americans with Disabilities Act and Section 504 of the Rehabilitation Act of 1973.

21.     JU entered into a contractual agreement with Julia to provide necessary accommodations and services.

22.     On February 9, 2021, the Director of Disability Support Services issued a Memorandum to Julia's professors (Exhibit A).  The memorandum instructs the faculty that Julia was to receive reasonable accommodations including extended time for exams and assignments, assistive technology (calculators, speech-text-speech software, etc.), professors' notes, a reader and a scribe.[2]

23.     These requested accommodations were renewed for the Fall 2021 Semester in a Confidential Memorandum dated August 25, 2021 (Exhibit B).

24.     Mr. and Mrs. Pernsteiner, were excited for their daughter's new opportunity but apprehensive that her intellectual challenges might not be fully addressed. With Julia's permission her parents spoke with the administration and they were promised by JU that they would be kept closely advised of Julia's  progress and any problems or  issues that might arise.

25.     Despite her challenges, Julia's  verbal skills were excellent and with the assistance of autocorrect and similar software programs, her writing in emails and text messages presented

---

[2] Exhibits A and B have been designated as "confidential" by counsel for JU and will be filed under seal at a later date.

as mainstream. However, without a reader, scribe, and software programs to assist her, Julia could not read, understand, take notes or complete assignments. For example, a page of her log contains multiple spelling, grammar and word choice errors:



26.     Defendant Jacksonville University failed and refused to comply with   the Individualized Education Plan, the Request for Accommodations, the Confidential Memorandum, and the promise to the family to advise of any problems.  JU failed to provide Julia with necessary accommodations including, failure to provide a scribe, reader, professors' notes, and assistive technology.

27.     Defendant JU failed to keep Julia's parents advised of her academic issues. Julia depended on tutoring help from the Academic Support Center on campus. When Julia enrolled in

classes for the Summer of 2021 Defendant JU failed to advise Julia or her parents that there was no Academic Support Center during the Summer Term.

28.     As a consequence of JU's failure to provide the promised and agreed upon reasonable accommodations, Julia was unable to complete assignments and examinations and her grades dropped.

29.     Julia became depressed about her lack of academic support and attempted to drop her Summer 2021 courses but JU refused.

## CROSS-COUNTRY TEAM

30.     Immediately after enrolling  at JU, Julia had  begun training with the women's cross-country track team then coached by Defendant Grigg.

31.     Grigg's actions and conduct described below occurred in the course and scope of his employment with Defendant JU.

32.     As a coach, Defendant Grigg was  oppressive, threatening, bullying, condescending and demeaning to many of the young women on the team.

33.     He created a toxic atmosphere of humiliation and intimidation  by belittling, disparaging and ridiculing runners who did not meet his standards.

34.     Grigg believed, incorrectly, that there was a direct correlation between a runner's weight and athletic ability. Accordingly, he 'fat shamed" women runners by mocking them as members of a "fat club".  He conducted weekly weigh-ins using a "bod pod" and demanding a BMI (body mass index) of 10%,  or less.  This is an unrealistic and unhealthy BMI. All of which prompted eating disorders in certain young, impressionable women on the team.

35.     Julia loved running and  bonded with her teammates,  but she was not an elite athlete. As a result, she was often the recipient of Grigg's malicious, humiliating and demeaning comments, text messages and emails.[3]

36.     Teammates recall Grigg taking a special satisfaction in humiliating Julia referring to her as "retarded" "the slowest f…ing runner on the team" and unable to "wipe your own a.." Julia, already struggling academically, now found that the sport she  loved and found comfort in, was the source of her coach's targeted ridicule and harassment.

37.     Julia and others on the team, reached out, unsuccessfully, to the JU Athletic Director, trainers, and the administration to report Grigg's conduct.

38.     When confronted with these allegations of misconduct and violations of Title IX, Section 504 and the ADA, the school closed ranks around Grigg and refused to take any action.

39.     JU staff and administration including the Athletic Director, Alex Ricker-Gilbert, the Title IX Coordinator, Kristi Gover among others, were aware of Grigg's malicious and illegal conduct.  Due, however, to his success as a track coach JU ignored his misconduct.   As long as Grigg's  teams were competitive, JU tolerated his outrageous behavior towards team members.

**CORROBORATING STATEMENTS  FROM TEAM MEMBERS**

40.     When no help from  JU  was forthcoming, Julia contacted current and former teammates to learn about  their  experiences  with  Grigg. In addition to the fat shaming and ridiculing, she learned that Grigg made inappropriate sexual comments and gestures to certain girls on the team.

> One runner reported:  "I witnessed him (Grigg) treat another teammate awfully, he would make jokes about her behind her back about her mental health, he would say that she was 'useless', that there was something wrong and it seemed like he kept

---

[3] Investigators learned that  Grigg has erased all text messages regarding Julia.

her around for his entertainment…I was not allowed to mess up otherwise he would take my scholarship away."

One former teammate recalls "Grigg had an affinity for picking one or two people out each year to bully…it was cruel and mean…especially coming from a grown man in a position of authority"

Another  former runner remembers: "When Julia reached out to me I knew exactly what she was feeling because I had been her just a few years earlier. I felt like the school had failed us."

Yet another runner recalls: "He instigated bullying on the team and created a toxic dynamic…this led to depression, feeling worthless and unwanted so much so that I gave up my athletic scholarship and transferred to a university closer to home."

41.     Team  members  were  not  alone  in  observing  Grigg's   humiliating  conduct.  A graduate student who  volunteered as an assistant coach for the team  reports: "Grigg created a hostile environment on the team but his hostility was heightened with Julia… she wanted advice but all she got was humiliation. Grigg made me feel like an object saying ' you should come over to my place for drinks, but don't accuse me of that Me Too S..t' …and 'you look great in those shorts, if only you were not a student'.   I don't know how this went on so long, I reported him to the school twice, but nothing was done.  Grigg was a monster."

42.     Grigg dismissed Julia from  the cross-country team in September, 2021.

43.     After leaving the team, Julia  continued to reach out for help to  JU staff. On October 18, 2021 she contacted the JU Athletic Director Alex Ricker-Gilbert:

Monday, October 18, 2021 12:32 PM
**To:** Ricker-Gilbert, Alex <            @ju.edu>
**Subject:** Academic eligibility

Hello -

I hope you're having a good morning. I was more than heartbroken to learn that I am no longer able to be on the track team, because my GPA is too low and I'm not fast enough to compete at this level. My coach knew my times when he recruited me to come to JU and he knew about my grades at UPike. I am not the slowest one on the team. I understand that he thinks that I'm not learning and that I can be

difficult to work with. I have learning disabilities and due to that disability have a hard time following directions. I show up to practice every day on time with a smile. I help my teammates when they need. At the end of the day I understand I'm not going to be a big point scorer but I have improved and everyone has a role-play on a team. I'm a walk-on so its not about the money. I just don't know where to go from here. I rely on the athletic academic help to do well. I would like to stay and work on improving my grades. I just am not able to do it myself. I'm looking for advice on how to proceed.

Sincerely,
Julia

44.     When her pleas for help went unanswered Julia's frustration spiraled into desperation and depression. She turned to social services at Mayo Clinic, the  Safe Sport Helpline and the Women's Center for help.

45.     On November 8, 2021 Julia committed suicide in her dorm room.

46.     Following Julia Pernsteiner's death, JU announced it was conducting an investigation into the conduct of Grigg.  In a December, 2021 letter from President Tim Cost and Dean Kristi Gover, the Pernsteiners were promised they would receive the outcome of the investigation. However, despite multiple requests, the report  was never provided to the family until they engaged counsel.

47.     In July, 2022 it was announced that Grigg was "no longer an employee of Jacksonville University"  the announcement continued: "All of our coaches and staff also will complete additional mandatory training involving mental health issues…including ..body image, nutrition, bullying, and building a healthy, supportive team culture."[4]

### COUNT ONE NEGLIGENCE CLAIM AGAINST JU
### FOR JULIA PERNSTEINER'S WRONGFUL DEATH

Plaintiffs reallege paragraphs 1- 47 and further state:

---

[4] A message from the Athletic Director July 9, 2022

48.     This claim is brought pursuant to the Florida Wrongful Death Statute 768.16 et seq.

49.     At all times material Defendant JU owed a duty to Julia Pernsteiner to act reasonably in providing academic and athletic resources.

50.     Defendant JU negligently failed to provide the necessary academic and athletic resources to Julia.

51.     Defendant JU negligently failed to properly supervise its employee Defendant Grigg in his conduct as athletic coach.

52.     Defendant JU negligently failed to provide the promised reasonable academic accommodations to Julia

53.     As a direct and proximate result of the negligence of JU as aforesaid Julia Pernsteiner fell into depression and took her own life.

54.     Plaintiffs Ray and Lynne Pernsteiner have been  deprived of the love, affection, comfort and companionship of their beloved daughter.

55.     The Estate of Julia Pernsteiner has lost the net accumulations she would have earned over her lifetime and has  incurred funeral expenses.

Wherefore, Plaintiffs demand judgment against Defendant JU for damages, costs and trial by jury.

## COUNT II SURVIVAL ACTION AGAINST JU FOR
## JULIA PERNSTEINER'S PAIN AND SUFFERING PRIOR TO HER DEATH

Plaintiffs reallege paragraphs 1- 47 and further state:

56.     This claim is brought pursuant to the Florida Survival Action Statute 46.021.

57.     At all times material, Defendant JU owed a duty to Julia Pernsteiner to act reasonably in providing academic and athletic resources.

58.     Defendant JU negligently failed to provide the necessary academic and athletic resources to Julia.

59.     Defendant JU negligently failed to properly supervise its employee Defendant Grigg in his conduct as athletic coach.

60.     Defendant JU negligently failed to provide the promised reasonable academic accommodations to Julia

61.     As a direct and proximate result of the negligence of JU as aforesaid, Julia Pernsteiner was harassed, intimidated, bullied and humiliated by Defendant Grigg while  he was acting as an employee of Defendant JU.

62.     For 22 months prior to her death Julia suffered pain, mental anguish, panic attacks, fear and depression.

Wherefore, Plaintiffs demand judgment against Defendant JU for damages, costs and trial by jury.

### COUNT III BREACH OF WRITTEN CONTRACT AGAINST  JU

Plaintiffs reallege paragraphs 1- 47 and further state:

63.     Plaintiffs and Defendant JU entered into written agreements (Exhibits A and B).

64.     Pursuant to the terms of the agreements, JU agreed to provide  Julia Pernsteiner with reasonable and necessary accommodations for her academic success at the university.

65.     Consideration for the provision of those services was the agreement of plaintiffs to pay the university tens of thousands of dollars in tuition, room and board, books and other charges.

66.     Plaintiffs paid the tuition and other expenses as they were invoiced and all other conditions precedent have occurred or been waived.

67.     Defendant JU breached the agreement and failed and refused to provide the promised and necessary accommodations to Julia when requested.

68.     As a direct and proximate result of JU's breach of contract Plaintiffs have sustained compensatory and special damages.

Wherefore, Plaintiffs demand judgment against Defendant JU for compensatory damages, special damages, costs and trial by jury.

## COUNT IV  INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST DEFENDANT GRIGG

Plaintiffs reallege paragraphs 1- 47 and further state:

69.     At all times material Defendant Grigg was fully aware of the fact that Julia Pernsteiner suffered from a disability as that term is defined in the ADA, Title IX and 504 of the Rehabilitation Act.

70.     He was aware that she suffered from ADHD, and a number of learning issues and struggled to complete academic assignments.

71.     He was aware that she was emotionally immature and had limited coping skills.

72.     He was aware that she loved the sport of cross-country and the camaraderie of her teammates.

73.     He was aware that Julia struggled with weight loss and was unable  to meet Grigg's expectations for her body mass index.

74.     Notwithstanding his knowledge of Julia's difficulties, Defendant Grigg berated and humiliated her to her face and behind her back to teammates.

75.     He attacked her about her weight, her learning disabilities, her performance as a runner and her relationships with teammates.

76.     His attacks were extreme, outrageous, intentional and reckless.

77.     His attacks were designed and intended to cause severe emotional distress to Julia and to force her off the women's cross-country team.

78.     As a direct and proximate result of the conduct of Defendant Grigg, Julia Pernsteiner suffered depression, anxiety, stress and suicidal ideation.

Wherefore, Plaintiffs demand judgment against Defendant Grigg for compensatory damages, punitive damages, costs and trial by jury.

### COUNT V RESPONDEAT SUPERIOR LIABILITY OF JU FOR THE INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS INFLICTED BY ITS EMPLOYEE DEFENDANT GRIGG

Plaintiffs reallege paragraphs 1 - 47 and the preceding count and further state:

79.     At all times material, Defendant Grigg was an employee of Defendant JU acting in the course and scope of his duties as athletic coach for the school.

80.     For years prior to the enrollment of Julia Pernsteiner,  the administration of JU was made aware of complaints about Grigg and his conduct toward women athletes

81.     Specifically, the administration and the athletic department received reports that Grigg  would intentionally and with malice, humiliate, berate and harass women on his teams.

82.     The JU administration knew, or should have known that Grigg's conduct was a violation of Title IX, and  Section 504 of the Rehabilitation Act.

83.     Notwithstanding that knowledge, JU administration negligently failed to properly manage  and supervise the conduct of its employee.

84.     Despite knowledge of Grigg's  outrageous and illegal behavior toward women on his teams, JU acquiesced and condoned that conduct as long as Grigg was coaching winning teams.

85.     Defendant JU's condoning of Grigg's conduct included his intentional infliction of emotional distress directed  toward Julia Pernsteiner as alleged above.

86.     As a direct and proximate result of the actions of JU as aforesaid, Julia Pernsteiner suffered severe anxiety, depression, fear and suicidal ideation.

Wherefore, Plaintiffs demand compensatory damages, punitive damages, costs and trial by jury.

## COUNT VI CLAIMS AGAINST DEFENDANT JU
## FOR VIOLATIONS OF TITLE IX

Plaintiffs reallege paragraphs 1- 47 and further state:

87.     This claim is brought pursuant to Title IX of the Education Amendments of 1972, 20 U.S.C. sec 1681 et seq.,  and under Florida law.

88.     At all times material, Julia Pernsteiner was a person protected by the provisions of Title IX of the Education Amendments of 1972.

89.     Based on the allegations above, Plaintiffs assert that Defendant JU deprived their daughter of rights and privileges guaranteed by Title IX, causing her injury.

Wherefore, Plaintiffs demand a declaratory judgement pursuant to 28 U.S.C. Sec 2201 and 2202 declaring that the Defendant JU has been conducting athletic programs which discriminate against young women on the basis of sex thereby depriving them of rights, privileges and immunities secured to them by the fourteenth amendment to the United States Constitution and Article I Sec 2 of the Florida Constitution.  That the court issue preliminary and final injunctive relief enjoining Defendant JU from further discrimination on the basis of sex.  Award Plaintiffs compensatory damages and costs and attorney's fees.

## COUNT VII CLAIMS AGAINST DEFENDANT JU FOR VIOLATION
## OF THE AMERICANS WITH DISABILITY ACT

Plaintiffs reallege paragraphs 1- 47 and further state:

90.     This is a claim brought pursuant to The American with Disability Act 42 U.S.C. 12182 et seq.

91.     The ADA is a civil rights law to prohibit discrimination solely on the basis of disability.

92.     At all times material, Julia Pernsteiner was a person protected by the provisions of the ADA by reason of her learning disabilities described above.

93.     Based on the allegations above, Plaintiffs assert that Defendant JU deprived their daughter of rights and privileges guaranteed by the ADA, causing her injury.

Wherefore, Plaintiffs demand a declaratory judgment declaring that Defendant JU discriminated against their daughter in violation of the ADA, enjoin JU from any further discriminatory conduct directed toward other students, and award Plaintiffs compensatory damages, costs and attorney's fees.

**COUNT VIII  CLAIMS AGAINST DEFENDANT JU FOR VIOLATION OF SECTION 504 OF THE REHABILITATION ACT OF 1973 AS AMENDED 29 U.S.C. SEC 794**

Plaintiffs reallege paragraphs 1- 47 and further state:

94.     This is a claim brought pursuant to section 504 of the rehabilitation act of 1973 as amended 29 U.S.C. Section 794 hereafter referred to as "section 504".

95.     Section 504 is a civil rights law to prohibit discrimination on the basis of disability in programs and activities, public and private, that receive federal financial assistance.

96.     At all times material, Julia Pernsteiner was a person protected by the provisions of section 504 by reason of her learning disabilities described above.

97.     Based on the allegations above, Plaintiffs assert that Defendant JU deprived their daughter of rights and privileges guaranteed by section 504 causing her injury.

98.     The conduct of the administration, staff and coaches at JU demonstrates either an intentional or bad faith discrimination against a student with learning disabilities.

Wherefore, Plaintiffs demand a declaratory judgment declaring that Defendant JU discriminated against their daughter in violation of section 504,  enjoin JU from any further discriminatory conduct directed toward other students, and award Plaintiffs compensatory damages, punitive damages,  costs and attorney's fees.

### DEMAND FOR TRIAL BY JURY

Plaintiffs demand a trial by jury for all issues so triable.

DATED:  February 3, 2023

SPOHRER & DODD, P.L.


 _/s/ Robert F. Spohrer._
Robert F. Spohrer, Esquire
Florida Bar No.: 184500
76 S. Laura Street, Suite 1701
Jacksonville, FL  32202
Telephone: (904) 309-6500
Facsimile: (904) 309-6501
Email:  rspohrer@sdlitigation.com
Secondary Email:  jheape@sdlitigation.com
                                eService@sdlitigation.com
*Attorney for Plaintiffs*



**JODY PHILLIPS**

**RECEIPT**

4326269

CLERK OF THE CIRCUIT AND COUNTY COURTS

JACKSONVILLE, DUVAL COUNTY, FLORIDA

Printed On:

02/03/2023 03:07

Page 1 of 1

| Receipt Number: 4326269 - Date 02/03/2023  Time 3:07PM | | | |
|---|---|---|---|
| **Received of:** | Spohrer and Dodd PL<br>76 S Laura Street<br>Suite 1701<br>Jacksonville, FL 32202 | | |
| **Cashier Name:** | EFile | **Balance Owed:** | 401.00 |
| **Cashier Location:** | E-Filing | **Total Amount Paid:** | 401.00 |
| **Receipt ID:** | 7686806 | **Remaining Balance:** | 0.00 |
| **Division:** | CV-H(Circuit Court) | | |

| Case# 16-2023-CA-000719-XXXX-MA -- PLAINTIFF: PERNSTEINER, RAY | | | |
|---|---|---|---|
| **Item** | **Balance** | **Paid** | **Bal Remaining** |
| Fees | 401.00 | 401.00 | 0.00 |
| **Case Total** | **401.00** | **401.00** | **0.00** |

| Payments | | |
|---|---|---|
| **Type** | **Ref#** | **Amount** |
| EFILING | 6395288 | **401.00** |
| **Total Received** | | **401.00** |
| **Total Paid** | | **401.00** |

## The clerk of courts is here to help you.

| We can be found online at: | **WWW.DUVALCLERK.COM** |
|---|---|
| The main courthouse Location is: | **Clerk of the Circuit and County Courts**<br>**Duval County, Florida**<br>501 West Adams Street<br>Jacksonville, Florida 32202 |
| The main telephone number is: | 904-255-2000 |
| Other Locations: | **Neptune Beach Courthouse Annex**<br>1543 Atlantic Blvd<br>Neptune Beach, Florida 32266 |

IN THE CIRCUIT COURT, FOURTH JUDICIAL CIRCUIT, IN AND FOR DUVAL COUNTY, FLORIDA

RAY AND LYNNE PERNSTEINER, individually and as Personal Representatives or the Estate of Julia Pernsteiner, deceased,

CASE NO.: 16-2023-CA-000719-XXXX-MA

DIVISION:  CV-H

        Plaintiffs,

vs.

JACKSONVILLE UNIVERSITY, a Florida Corporation, and RONALD E. GRIGG, JR.,

        Defendants.

_____/

## **SUMMONS**

THE STATE OF FLORIDA

To Each Sheriff of the State:

        You are commanded to serve this Summons and a copy of the Complaint or Petition in this action on Defendant:

        Jacksonville University
        c/o Corporate Creations Network, Inc., Registered Agent
        801 U.S. Highway 1
        North Palm Beach, FL  33408

        The Defendant is required to serve written defenses to the Complaint on Plaintiffs' attorney, whose name and address is:

        Robert F. Spohrer, Esquire
        SPOHRER & DODD, P.L.
        76 S. Laura Street, Suite 1701
        Jacksonville, FL  32202
        (904) 309-6500 telephone
        (904) 309-6501 facsimile

within 20 days after service of this Summons that Defendant, exclusive of the day of service, and to file the original of the defenses with the Clerk of this Court either before service on Plaintiffs' attorney or immediately thereafter.  IF a defendant fails to do so, a default will be entered against that Defendant for the relief demanded in the Complaint or Petition.

WITNESS my hand and the seal of this Court on    02/09/2023
                                              _____ .

                              Jody Phillips
                              Clerk, Circuit Court

BY:_____
                              DEPUTY CLERK

IN THE CIRCUIT COURT, FOURTH JUDICIAL CIRCUIT, IN AND FOR DUVAL COUNTY, FLORIDA

RAY AND LYNNE PERNSTEINER, individually and as Personal Representatives or the Estate of Julia Pernsteiner, deceased,

CASE NO.: 16-2023-CA-000719-XXXX-MA
DIVISION: CV-H

       Plaintiffs,

vs.

JACKSONVILLE UNIVERSITY, a Florida Corporation, and RONALD E. GRIGG, JR.,

       Defendants.

_____/

## <u>SUMMONS</u>

THE STATE OF FLORIDA

To Each Sheriff of the State:

       You are commanded to serve this Summons and a copy of the Complaint or Petition in this action on Defendant:

       Ronald E. Grigg, Jr.
       3550 Hartsfield Forest Circle
       Jacksonville, FL  32277

       The Defendant is required to serve written defenses to the Complaint on Plaintiffs' attorney, whose name and address is:

       Robert F. Spohrer, Esquire
       SPOHRER & DODD, P.L.
       76 S. Laura Street, Suite 1701
       Jacksonville, FL  32202
       (904) 309-6500 telephone
       (904) 309-6501 facsimile

## <u>IMPORTANT</u>

A lawsuit has been filed against you. You have 20 calendar days after this summons is served on you to file a written response to the attached complaint with the clerk of this court. A phone call will not protect you. Your written response, including the case number given above and the names of the parties, must be filed if you want the court to hear your side of the case. If you do

not file your response on time, you may lose the case, and your wages, money, and property may thereafter be taken without further warning from the court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response to the court you must also mail or take a copy of your written response to the "Plaintiff/Plaintiff's Attorney" named below.

<u>IMPORTANTE</u>

Usted ha sido demandado legalmente. Tiene 20 dias, contados a partir del recibo de esta notificacion, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal. Una llamada telefonica no lo protegera. Si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el numero del caso y los nombres de las partes interesadas. Si usted no contesta la demanda a tiempo, pudiese perder el caso y podria ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal. Existen otros requisitos legales. Si lo desea, puede usted consultar a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guia telefonica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal, debera usted enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney" (Demandante o Abogado del Demandante).

<u>IMPORTANT</u>

Des poursuites judiciares ont ete entreprises contre vous. Vous avez 20 jours consecutifs a partir de la date de l'assignation de cette citation pour deposer une reponse ecrite a la plainte ci-jointe aupres de ce tribunal. Un simple coup de telephone est insuffisant pour vous proteger. Vous etes obliges de deposer votre reponse ecrite, avec mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez que le tribunal entende votre cause. Si vous ne deposez pas votre reponse ecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur du tribunal. Il y a d'autres obligations juridiques et vous pouvez requerir les services immediats d'un avocat. Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones).

Si vous choisissez de deposer vous-meme une reponse ecrite, il vous faudra egalement, en meme temps que cette formalite, faire parvenir ou expedier une copie de votre reponse ecrite au "Plaintiff/Plaintiff's Attorney" (Plaignant ou a son avocat) nomme ci-dessous.

WITNESS my hand and the seal of this Court on ___02/09/2023_____ .

Jody Phillips
Clerk, Circuit Court

BY:_____
DEPUTY CLERK



**JODY PHILLIPS**

**RECEIPT**
4330111

CLERK OF THE CIRCUIT AND COUNTY COURTS
JACKSONVILLE, DUVAL COUNTY, FLORIDA

Printed On:
02/09/2023 04:31
Page 1 of 1

| Receipt Number: 4330111 - Date 02/09/2023  Time 4:31PM | | | |
|---|---|---|---|
| Received of: | Spohrer and Dodd PL<br>76 S Laura Street<br>Suite 1701<br>Jacksonville, FL 32202 | | |
| Cashier Name: | EFile | Balance Owed: | 20.00 |
| Cashier Location: | E-Filing | Total Amount Paid: | 20.00 |
| Receipt ID: | 7690915 | Remaining Balance: | 0.00 |
| Division: | CV-H(Circuit Court) | | |

| Case# 16-2023-CA-000719-XXXX-MA -- PLAINTIFF: PERNSTEINER, RAY | | | |
|---|---|---|---|
| Item | Balance | Paid | Bal Remaining |
| Fees | 20.00 | 20.00 | 0.00 |
| **Case Total** | **20.00** | **20.00** | **0.00** |

| Payments | | |
|---|---|---|
| Type | Ref# | Amount |
| EFILING | 6451219 | **20.00** |
| **Total Received** | | **20.00** |
| **Total Paid** | | **20.00** |

## The clerk of courts is here to help you.

| | |
|---|---|
| We can be found online at: | **WWW.DUVALCLERK.COM** |
| The main courthouse Location is: | **Clerk of the Circuit and County Courts**<br>**Duval County, Florida**<br>501 West Adams Street<br>Jacksonville, Florida 32202 |
| The main telephone number is: | 904-255-2000 |
| Other Locations: | **Neptune Beach Courthouse Annex**<br>1543 Atlantic Blvd<br>Neptune Beach, Florida 32266 |

IN THE CIRCUIT COURT, FOURTH JUDICIAL CIRCUIT, IN AND FOR DUVAL COUNTY, FLORIDA

RAY AND LYNNE PERNSTEINER, individually and as Personal Representatives or the Estate of Julia Pernsteiner, deceased,

CASE NO.: 16-2023-CA-000719-XXXX-MA

DIVISION: CV-H

Plaintiffs,

vs.

JACKSONVILLE UNIVERSITY, a Florida Corporation, and RONALD E. GRIGG, JR.,

Defendants.

_____/

## ACCEPTANCE AND WAIVER OF SERVICE OF PROCESS

Defendants, JACKSONVILLE UNIVERSITY and RONALD E. GRIGG, JR., by and through their undersigned counsel, hereby acknowledge receipt of a copy of the Complaint and Demand for Jury Trial filed in this action on February 9, 2023 and hereby waive formal service of process. Defendants further agree to respond or otherwise plead to the Complaint on or before March 13, 2023.

DATED: February 13th, 2023

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

JACKSON LEWIS, P.C.
501 Riverside Avenue, Suite 902
Jacksonville, FL  32202
Telephone:  (904) 638-2655

By: */s/ B. Tyler White*
B. Tyler White
Florida Bar No. 0038213
tyler.white@jacksonlewis.com
Todd R. Dobry
Florida Bar No. 109081
todd.dobry@jacksonlewis.com
and
GARGANESE, WEISS, D'AGRESTA &
SALZMAN, P.A.
111 N Orange Ave, Ste 2000
Orlando, FL 32801-2327
Jeffrey Scott Weiss
Florida Bar No. 750565
jweiss@orlandolaw.net
Erin J. O'Leary
Florida Bar No. 1510
eoleary@orlandolaw.net

*Attorney for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed and served via the Florida Courts E-Filing Portal to all counsel of record listed on the service list this 13th day of February, 2023 as follows:

Robert F. Spohrer, Esquire
Spohrer & Dodd
76 S. Laura Street, Suite 1701
Jacksonville, FL  32202
Telephone:  (904) 309-6500
Email:  rspohrer@sdlitigation.com
         jheape@sdlitigation.com
         eservice@sdlitigation.com

*Attorney for the Plaintiffs*

                              */s/B. Tyler White*
                              Attorney

4884-9858-9520, v. 1

*Page 2 of 2*