## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

RAY AND LYNNE PERNSTEINER,
as personal representatives of the estate
of Julia Pernsteiner,

                                    Case No. 3:23-cv-246-BJD/MCR

        Plaintiffs,

v.

JACKSONVILLE UNIVERSITY, a
Florida corporation, and RONALD E.
GRIGG, JR.,

        Defendants.

_____/

## JACKSONVILLE UNIVERSITY'S MOTION TO DISMISS [DE 32] SECOND AMENDED COMPLAINT AND DEMAND FOR A JURY TRIAL

Defendant, JACKSONVILLE UNIVERSITY, a Florida corporation ("JU" or "Defendant"), pursuant to Federal Rules of Civil Procedure 8(a), 10(b), and Rule 12(b)(6), respectfully files this Motion to Dismiss the Second Amended Complaint and Demand for Jury Trial [DE 32] ("SAC") filed by Plaintiffs, RAY and LYNNE PERNSTEINER as personal representatives of the Estate of Julia Pernsteiner ("Plaintiffs"), and in support thereof, states:

## INTRODUCTION

Plaintiffs' SAC attempts to allege six (6) separate counts against Defendants JU and Grigg. As directed to JU, those counts are: Count I – Violation of Section 504 of the Rehabilitation Act of 1973 (the "RA"); Count II – Violation of 20 U.S.C. § 1681,

*et seq.* (Title IX); Count V – "Respondeat Superior"; and Count VI – Negligence.[1] Plaintiffs' third pleading, the SAC, does not cure any of the deficiencies or dispositive arguments raised in JU and Grigg's prior Motions to Dismiss the Amended Complaint. If anything, the SAC is even more rife with technical, substantive, and legal issues - all of which require dismissal. As demonstrated below Plaintiffs have not, and cannot – as a matter of fact and as a matter of law – plausibly allege claims against JU. As a result, Counts I, II, V, and VI, and the SAC as a whole, should be dismissed *with prejudice*.

<u>**MEMORANDUM OF LAW**</u>[2]

I.      **The SAC Is A Shotgun Pleading & Violates Federal Pleading Rules.**

The SAC violates Rule 8 and Rule 10 of the Federal Rules and constitutes an improper shotgun pleading by incorporating the same allegations into multiple counts and by improperly combining multiple claims under individual counts. *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1322-23 (11th Cir. 2015).

In Counts I and II of the SAC, Plaintiffs purport to bring a claims under the RA and Title IX. [DE 32 at ¶¶ 38-35 (Count I), ¶¶ 46-52 (Count II)]. Counts I and II improperly incorporate Paragraphs 1-37, which embody all of the "general" allegations of the SAC. *Id.* at ¶ 38, ¶ 46. Count VI also incorporates the same set of "general allegations" as Count III, and the same allegations are effectively

---

[1] Count VI is incorrectly numbered in the SAC as Count VII, and is correctly numbered herein.
[2] In the interest of brevity, JU incorporates by reference the standards governing motions to dismiss which were previously submitted in JU's Motion to Dismiss Amended Complaint [DE 12 at *2-3].

2

incorporated into each of the six (6) Counts of the SAC. *Id.* at ¶ 64. Count V, incredibly, incorporates Paragraphs 1-35, but also Paragraphs 54-56 (Count III) and Paragraphs 58-60 (Count IV). *Id.* at ¶ 61.

Consequently, the SAC is replete with conclusory, vague, and immaterial allegations which are not obviously connected to any particular cause of action, and are thus "fatally defective." *Weiland*, 792 F.3d at 1323 n.15 (citations omitted); *Benoit v. Ocwen Fin. Corp., Inc.*, 960 F. Supp. 287, 290 (S.D. Fla. 1997); *see also Ferrell v. Durbin*, 311 F. App'x 253, 259 (11th Cir. 2009) (holding that the court should not have to parse the allegations of a complaint to determine which allegations could form the basis of each claim); *Mukamal v. BMO Harris Bank N.A.*, 2012 Bankr. Lexis 6305, at *12-13 (Bankr. S.D. Fla., July 3, 2012) (dismissing the complaint for failure to comply with pleading requirements where the plaintiff reasserted same set of allegations in each claim). The SAC should be dismissed for this reason alone. *Id.*; *see also Daay-Petrano v. Labarga*, 2016 U.S. Dist. LEXIS 84469, *10-11 (M.D. Fla. June 29, 2016) (dismissing complaint as a shotgun pleading).

In addition, Plaintiffs have improperly combined, and seek to assert, multiple distinct claims in individual counts. While couched under the guise of a single claim of "violation" of the RA and Title IX, Counts I and II seek to allege multiple claims or theories of liability under each statute and Count *all based on* the same purported set of allegations. In this regard, it is entirely unclear what is actually being claimed in Count I as the allegations within that count are a confusing amalgam of legal conclusions and buzz words. [DE 3 at ¶¶ 39-45]. However, based on the wholly

deficient and conclusory allegations, *infra*, incorporated into Count I, this "claim" appears to combine a minimum of three (3) separate claims: a traditional/disparate treatment theory; a claim for failure to accommodate; and/or a retaliation theory. *Id.* The same impropriety plagues Count II under Title IX. *See id.* at ¶¶ 46-52.

Counts III and VI are even more problematic. Between just these two Counts of purported "negligence" against JU and Grigg, there are a *conservative* minimum of fourteen (14) separate causes of action – none of which exist or have a cognizable basis in the law, *supra*. *See* [DE 32 at ¶¶ 53-56, ¶¶ 64-67]. Each of the frivolous "duties" alleged in both counts are predicated on various different "sources," that would (if they existed) have vastly different standards of care, each requiring a different set of facts to plausibly allege the claim. *See e.g.*, *id.* ¶ 65(a) *with* ¶ 65(d) *and* ¶ 65(f).

The SAC is but another improper and impermissible shotgun pleading, rife with conclusory and adjectival phrases, and devoid of facts. Plaintiffs' failure to comply with Rules 8(a) and 10(b) of the Federal Rules makes it impossible for JU to have notice of the claims being asserted, and the allegations that purportedly support each claim. "Shotgun pleadings fail to satisfy basic rule requirements that a complaint contain a short and plain statement of a claim." *Hall v. The Haskell Co.*, Case No. 3:21-cv-01184-HES-LLL (Doc. 30 at *4) (M.D. Fla. Jan. 25, 2023) (citing Fed.R.Civ.P. 8(a)(2)). "Such a pleading is never plain because it is impossible to comprehend which specific factual allegations the plaintiff intends to support which of his causes of action, or how they do so." *Id.* (quoting *Est. of Bass v. Regions Bank, Inc.*, 947 F.3d 1352, 1358 (11th Cir. 2020)).

Accordingly, the SAC should be dismissed as an improper shotgun pleading. *Id.*; *see also Weiland*, 792 F.3d 1313; *Burgess v. Royal Caribbean Cruises Ltd.*, No. 20-CV-20687-MARTINEZ-OTAZO-REYES, 2020 U.S. Dist. LEXIS 188606, at *4-5 (S.D. Fla. Oct. 9, 2020) (dismissing claims titled "Negligent Hiring, Selection, Retention, Monitoring and Training" as impermissible shotgun pleading because "[t]hese counts combine different causes of action that have distinct elements of law and require different findings"); *Pinto v. Collier Cnty.*, 2019 U.S. Dist. LEXIS 191707, at *4 (M.D. Fla. Nov. 5, 2019) (dismissing complaint where "Count XIV consists of four separate causes of action – negligent hiring, negligent training, negligent retention, and negligent supervision"); *see also*, *supra*.

## II.   Respondeat Superior Is Not A Cause Of Action Under Florida Law.

Count V of the SAC seeks to bring a claim for "respondeat superior." [DE 32 at ¶¶ 61-63. As a matter of law, Count V must be dismissed *with prejudice* for failure to state a claim upon which relief may be granted. "Respondeat superior" is not an independent cause of action; it is only a doctrine of liability. *See, e.g.*, *Colite Int'l v. Robert L. Lipton*, 2006, U.S. Dist. LEXIS 109530, *33 (S.D. Fla. Jan. 20, 2006); *Chunhong Jia v. Boardwalk Fresh Burgers & Fries, Inc.*, 2020 U.S. Dist. LEXIS 171902, *7-8 (M.D. Fla. Sept. 21, 2020) (respondeat superior claim dismissed with prejudice as no cause of action exists under Florida law) (collecting cases); *McKenzie v. U.S. Tennis Ass'n Inc.*, 2023 U.S. Dist. LEXIS 71181, *18 (M.D. Fla. Apr. 24, 2023) (same).

## III.   Plaintiffs Fail To State Claim Under The Rehabilitation Act (Count I).

Count I purports to allege a claim under the RA. *See* [DE 32 at ¶¶ 39-45]. The RA provides that: "No <u>otherwise qualified individual</u> with a disability in the United States…shall, <u>solely by reason of her or his disability</u>, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program receiving Federal financial assistance…." 29 U.S.C. § 794(a) (emphasis added).[3] In order to establish a prima facie case of discrimination under the RA, Plaintiffs must plausibly allege that their daughter Julia: (1) was disabled; (2) was "otherwise qualified" for the program or activity; (3) was excluded from the program or activity solely because of the disability; and, (4) sought to use a program or activity that receives federal financial assistance. *Datto v. Univ. of Cent. Fla. Bd. of Trs.*, 2021 U.S. Dist. LEXIS 23632, *9-10 (M.D. Fla. Feb. 5, 2021) (citing *Harris v. Thigpen*, 941 F.2d 1495, 1522 (11th Cir. 1991)).

"In the context of postsecondary education, an 'otherwise qualified' individual must be able to meet the academic and technical standards requisite to admission or participation in the education program or activity, in spite of his handicap." *J.A.M. v. Nova Southeastern Univ., Inc.*, 646 F. App'x 921, 926 (11th Cir. 2016) (cite omitted); *Onishea v. Hopper*, 171 F.3d 1289, 1300 (11th Cir. 1999) (same). Moreover, a plaintiff <u>cannot</u> prevail if the adverse action is <u>partially based</u> on their disability and partially

---

[3] "Disability discrimination claims under the ADA and Section 504 are subject to a similar legal analysis, because both statutes are generally construed to impose the same legal requirements." *Forbes v. St. Thomas Univ., Inc.*, 768 F. Supp. 2d 1222, 1227 (S.D. Fla. 2010) (internal citation omitted). The only difference is "with respect to causation[.]" *Alboniga v. Sch. Bd. of Broward Cnty. Fla.*, 87 F. Supp. 3d 1319, 1332 (S.D. Fla. 2015).

on other factors. *See Porterfield v. Soc. Sec. Admin.*, 2021 U.S. App. LEXIS 26129, at *12-13 (11th Cir. 2021).

Here, Plaintiffs assert that that "JU intentionally excluded Julia from full participation and from the full benefits of participating in JU's educational and athletic activities[.]" [DE 32] at ¶ 42. This is a pure legal conclusion. It is entirely unclear, and Plaintiffs do not otherwise allege any facts identifying, or indicating, what "activities" are at issue in Count I. *Id.* at 9 ¶¶ 42-44. While Plaintiffs' reliance on purely conclusory assertions and buzz words throughout the SAC, and exclusively in Count I, makes it impossible to determine what claim Julia had under the RA prior to her death, it does make it clear that Plaintiffs have failed to plausibly allege such a claim.

Indeed, there are no alleged facts sufficient to show or support that Julia was "otherwise qualified" for activities at JU (whichever those may be). *See* [DE 32]. For example, in order to bring a claim under the RA for her alleged "dismissal" from the cross-country team, Plaintiffs need to allege facts showing that she was otherwise qualified to be on the team and was excluded from, or denied the benefits of, participation on the team "solely because of" her disability. *See, supra*.

Based on the allegations in the SAC, all of which are vague and conclusory, her alleged dismissal was <u>not</u> "solely because" of her purported disability. *See* [DE 32 at ¶¶ 24-28, and ¶29]. While intentionally omitted from the SAC in an attempt to avoid dismissal, Plaintiffs' Amended Complaint [DE 3] and Julia's own email to JU's Athletic Director from October 13, 2021, unequivocally contradict and should estop Plaintiffs from even attempting to argue that Julia's *<u>ineligibility</u>* to be on the team was

*solely* because of her purported disability. [DE 3 at ¶ 35 ("Julia loved running…but she was not an elite athlete."), ¶ 43 (quoting Julia, "I was more than heartbroken to learn that I am no longer able to be on the track team, because my GPA is too low and I'm not fast enough to compete at this level…[a]t the end of the day I understand I'm not going to be a big point scorer"].

Plaintiffs allege that JU knew of Julia's purported disability prior to offering her admission, that JU admitted and enrolled Julia, and JU's Director of Disability Support Services granted her eligibility to receive accommodations. *Id.* at ¶¶ 15-18. *See id.* at ¶¶ 9 and 11. Plaintiffs do not allege any facts that suggest Julia was treated any differently <u>solely based on</u> her purported disabilities. *See generally id.* Nor does the SAC identify, or allege any <u>facts</u> sufficient to plausibly show, any purported comparators. *Id.* Plaintiffs' cursory accusations in the SAC that Grigg, JU's Athletic Director, and/or JU's Director of Disability Services "knew" or were "aware" of her alleged disability "does not mean or lead to the reasonable inference" that any decision was made <u>solely because of</u> Julia's alleged disability. *See e.g.*, *D.P. v. Sch. Bd.*, 2021 U.S. Dist. LEXIS 239983, at *83 (S.D. Fla. Dec. 14, 2021).

Although a pleading need only contain a short and plain statement of the claim showing that the pleader is entitled to relief, a plaintiff must nevertheless articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To the extent Plaintiffs are attempting to claim that Julia was "excluded" or denied the benefits of any educational program, they fail to plausibly allege it. In sum, the SAC does not contain sufficient factual matter,

which, if accepted as true, plausibly shows that Julia was excluded from participation in, denied the benefits of, or subjected to discrimination under any educational or athletic activities under a theory of disparate treatment. To the extent Count I attempts to allege disparate treatment under the RA, it must be dismissed. *See J.A.M.*, 2015 U.S. Dist. LEXIS 10596 *9-11, *aff'd*, 646 F. App'x 921 (11th Cir. 2016).

### 1. Plaintiffs Fail to Allege A Failure To Accommodate a Disability

To state a claim under the RA based on a failure to accommodate, Plaintiffs must allege sufficient facts to plausibly show Julia was "discriminated against by way of the defendant's failure to provide a reasonable accommodation." *McKane v. UBS Fin. Servs., Inc.*, 363 F. App'x 679, 681 (11th Cir. 2010); *see also J.A.M.*, 2015 U.S. Dist. LEXIS, at *11. "A [student] with a disability is not entitled to the accommodation of h[er] choice, but only to a reasonable accommodation." *Id*.

Plaintiffs fail to allege facts that plausibly show Julia requested a reasonable accommodation and/or that she was denied a reasonable accommodation for her alleged disability. *See generally*, *id*. Instead, they merely assert that "JU also withheld the assistance it knew Julia required to succeed academically, denying her the accommodations and assurances it had previously made." *Id*. at ¶ 27. This vague and wholly conclusory allegation is insufficient. *Twombly*, 550 U.S. 544.

Plaintiffs also fail to identify what "assistance" Julia purportedly needed, or that JU purportedly "knew" she needed. Nor are there any facts alleged to support Plaintiffs' conclusion that JU denied Julia any "accommodations" or "assurances." *See generally,* [DE 32]. In fact, Plaintiffs do not even identify, describe, or allege facts

relating to any particular accommodation or assurance or that suggest that JU, its Director of Disability Services, or any other person with the knowledge, ability, or authority to decide any aspect of an accommodation request at JU, ever denied or withheld any such "accommodation" or assurance" from Julia. *Id.* There are especially no facts to plausibly support a contention that any discrimination occurred "*solely because of*" Julia's purported disability, or that JU intentionally or with deliberate indifference denied her full participation and benefits in any activities. *Id.* Indeed, the SAC devoid of any facts as to the "who, what, when, where, why, or how." *Id.*

What the SAC does allege, however, is that possible accommodations for Julia's purported disability <u>may include</u>: assistive technology, study guides, extended time to complete work, autocorrect, a scribe and a reader. *Id.* at ¶¶ 9, 11. The SAC also indicates, on its face, that JU made these things available to Julia as potential accommodations. *Id.* at ¶ 17. In regard to these potential accommodations, however, Plaintiffs still fail to allege that Julia ever requested or demanded these, or any other, accommodations. *See generally*, *id.* For this reason alone, Count I fails to plausibly allege a claim under the RA for failure to accommodate. *Zainulabeddin v. Univ. of S. Fla. Bd. of Trustees*, 749 F. App'x 776, 783 (11th Cir. 2018) (holding that the public university was not obligated to accommodate the plaintiff before she requested accommodations) (citing *Gaston v. Bellingrath Gardens & Home, Inc.*, 167 F.3d 1361, 1363 (11th Cir. 1999) ("[A] plaintiff cannot establish a claim under the [RA] alleging

that the defendant discriminated against him by failing to provide a reasonable accommodation unless he demanded such an accommodation.")).

To be sure, the only "request" or "refusal" mentioned in the SAC is Julia's purported request to drop all of her Summer 2021 courses. [DE 32 at ¶ 28]. It must be emphasized that to the extent Plaintiffs contend that their artful phrasing of Paragraph 28 alleges that Julia was denied "tutoring" in violation of the RA, they do not. *Id.* What they actually allege, albeit without any facts to support it, is that "JU knew or should have known that Julia was dependent on tutoring help from the campus Academic Support Center but failed to advise her or the PERNSTEINERS that the Center was not available during the Summer 2021 term when she enrolled for that term." *Id.* Even when assuming, *in arguendo*, that this assertion is true, it still fails to support a claim under the RA because there are <u>no</u> facts alleged in the SAC stating that Julia *requested* tutoring; let alone facts that would plausibly suggest a violation of the RA occurred.[4] *See Zainulabeddin v. Univ. of S. Fla. Bd. of Trustees*, 749 F. App'x 776, 783 (11th Cir. 2018) (holding that the university was not obligated to accommodate the plaintiff before she requested accommodations) (citing *Gaston v. Bellingrath Gardens & Home, Inc.*, 167 F.3d 1361, 1363 (11th Cir. 1999) ("[A] plaintiff cannot establish a claim under the [RA] alleging that the defendant discriminated against him by failing

---

[4]      For example: (i) there are no facts to support JU's purported knowledge; (2) there are no allegations that suggest Julia ever requested, or even expressed a need for tutoring (at any time, or for any course), or facts which support the necessary assumptive inference that Julia "needed" tutoring; and, (3) the allegation does not remotely suggest, nor do Plaintiffs allege any facts, that JU treated Julia differently from other students. *See id,* and *generally* [DE 32].

to provide a reasonable accommodation unless he demanded such an accommodation.")).

Plaintiffs further fail to allege any facts that would even suggest how "rejecting" Julia's purported request to drop all of her Summer 2021 courses amounts to a failure to accommodate, or how rejecting a request to withdraw from a program amounts exclusion from, or the denial of benefits of, a program, in violation of the RA. Even if Plaintiffs did try to assert such allegations in the SAC, the claim must still be dismissed because withdrawing from an entire term is not an "accommodation." *See e.g.*, *Datto v. Univ. of Miami*, 2020 U.S. Dist. LEXIS 131697, at *31 (S.D. Fla. July 23, 2020) (dismissing RA and ADA claims with prejudice and finding that an alleged request to meet with the admissions committee failed to support the RA claim because the complaint did not allege that the requested "accommodations" would have enabled the plaintiff to meet the university's requirements or that granting of the accommodation would not fundamentally alter the nature of the university's program); *see also, e.g.*, *Zainulabeddin*, 749 F. App'x at 782 (holding that despite the university's recognition that the plaintiff's poor academic performance in previous years was due to her unaccommodated disability, the university "was not required to make 'major adjustments' to its medical-doctor program to accommodate her by, for example, extending its normal maximum time limit to complete the program or altering its rules for students who fail an academic year.").

Thus, to the extent Count I attempts to allege a failure to accommodate claim under the RA, it must be dismissed with prejudice. *Id.*; *Onishea*, 171 F.3d 1289.

### 2.  Plaintiffs Fail To Allege Retaliation Under The RA.

"The *prima facie* test for retaliation under the [RA] is the same as one under the ADA." *Datto*, 2020 U.S. Dist. LEXIS 131697, at *33 (cite omitted).[5] "To establish a case of retaliation under the ADA, a plaintiff must show that: (1) he engaged in statutorily protected conduct; (2) he suffered a material adverse action of a type that would dissuade a reasonable [university student] from engaging in statutorily protected activity; and (3) a causal link exists between the protected activity and the adverse actions." *Id.* (cite omitted). "A plaintiff establishes a causal connection if they show the defendant knew of the protected behavior and there was a 'close temporal proximity between this awareness and the adverse…action.'" *Id*.

Plaintiffs fail to allege facts sufficient to plausibly show that Julia engaged in any protected activity under the RA. *See generally id.* Plaintiffs vaguely reference "reports" but do not allege any facts that could possibly, or plausibly, show that any such "report" constitutes protected activity under the RA, that Grigg or some other decision-maker knew about the activity, or that Julia experienced some unidentified, and unalleged, act of disability discrimination because of such activity. *Id.* The "who, what, when, where, how, or why" of such a claim are entirely absent.

Instead, the SAC only contains conclusory allegations and buzz words, that again, are insufficient to plausibly state a claim. To be certain, Plaintiffs assert that some unidentified "other" runners on the cross-country team, "including Julia,"

---

[5] Under the ADA's anti-retaliation provision, "[n]o person shall discriminate against an individual because such individual has opposed any act or practice made unlawful by this chapter." 42 U.S.C. § 12203(a); *Zainulabeddin*, 749 F. App'x at 782.

reported some unspecified conduct, at some unknown time(s), to some unidentified person, in some unarticulated manner. *Id.* at ¶ 26. Their unadorned conclusion that "[i]n September 2021 [Grigg] dismissed Julia from the cross-country team in retaliation for her complains and encouraged her to leave JU altogether" is just that; an unadorned legal conclusion masquerading as a fact. *Id.* at ¶ 29.

Even if the Court were to assume that any "report" or complaint was made by Julia about Grigg prior to September 2021 (which it was not), and that the purported report constitutes protected activity under the RA, there are still no factual allegations to plausibly form a causal connection between any such conduct and her alleged "dismissal" from the team. *See generally id.*; *see e.g.*, *Paterakis v. Dist. of Brevard Cnty.*, 2009 U.S. Dist. LEXIS 68084, *18 (M.D. Fla. Aug. 3, 2009) (dismissing retaliation claim under the RA due to insufficient allegations and legal conclusions); *J.A.M.*, 646 F. App'x 921.

Plaintiffs fail to plausibly allege a *prima facie* claim under the RA, and to the extent Count I attempts to assert a claim for retaliation, it is due to be dismissed.

### 3. Plaintiffs Fail To Allege Recoverable Relief Under The RA.

"A plaintiff seeking compensatory damages under § 504 must show that a defendant violated his rights under the statute and did so with discriminatory intent." *Silberman v. Miami-Dade Transit*, 2016 U.S. Dist. LEXIS 174314, *17-18 (S.D. Fla. Dec. 15, 2016) (citing *Liese v. Indian River Cnty. Hosp. Dist.*, 701 F.3d 334, 342 (11th Cir. 2012)). To collect compensatory damages from JU on the RA claim, Plaintiffs must "show deliberate indifference on the part of an *official* who at a minimum has

*authority* to address the alleged discrimination and to institute corrective measures on the organization's behalf and who has *actual knowledge* of discrimination in the organization's programs and fails to adequately respond." *Id.* at *18 (cite omitted, emphasis in original). Using words like "intentional discrimination" and "deliberate indifference" and other buzz words in a complaint are insufficient where, as in the SAC, they are unsupported by factual allegations. *Id.* at *18 n.11 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Twombly*, 550 U.S. at 555).

To show intentional discrimination by deliberate indifference "is an 'exacting standard,' *Doe v. Sch. Bd. of Broward Cnty.*, 604 F.3d 1248, 1259 (11th Cir. 2010), which requires showing more than gross negligence, *Liese*, 701 F.3d at 344." *McCullum v. Orlando Reg'l Healthcare Sys.*, 768 F.3d 1135, 1147 (11th Cir. 2014). A plaintiff must show that the defendant "knew that harm to a federally protected right was substantially likely and failed to act on that likelihood." *Id.* (quoting *Liese*, 701 F.3d 334 (internal quotes omitted)(emphasis in original). Even when assuming well-pled allegations in the SAC as true, and construing the SAC in a light most favorable to Plaintiffs, there simply is nothing in the body of their pleading that plausibly supports the requisite standard to plausibly show a basis to recover compensatory damages or of what those damages could consist. *See* [DE 36]; *see e.g.*, *McCullum*, 768 F.3d 1135, 1147-49 (affirming summary judgment and failure to demonstrate the standard necessary for compensatory damages under the RA).

In Count I, Plaintiffs claim Julia "suffered economic damages, including the lost value of a JU degree and the opportunity to train and compete with the cross-

country team, the loss of expected future earnings, [and] expenses incurred in her attempts to manage the effects of JU's discrimination on her." [DE 32 at ¶ 45]. However, like all other allegations in the SAC, there are no facts pled that plausibly show that JU violated the RA, let alone that Julia may have possibly incurred any of those purported "economic damages" or how JU could even potentially be liable for such damages. *See generally*, [DE 32].[6] There are no allegations that could possibly correlate a violation of the RA to any of those purported "economic damages" – which in and of itself is another false label given that "the opportunity to train and compete with the…team" is not "economic." As pled in the SAC, the only harm alleged by Plaintiffs is emotional distress, which is not recoverable. *See* [DE 36] at ¶¶ 27, 34-35.

As the Supreme Court recently ruled, the "special" damages sought by plaintiffs are not recoverable under the RA. *Cummings v. Premier Rehab Keller, P.L.L.C.*, 142 S. Ct. 1562 (2022). In reaching its conclusion, the Court posed a simple question: "Would a prospective funding recipient, at the time it 'engaged in the process of deciding whether [to] accept' federal dollars, have been aware that it would face such liability?" *Id.* at 1570-71. When posing this same question to the relief sought by Plaintiffs in

---

[6]     These purported damages are not cognizable, and most certainly are not supported by any factual allegations in the SAC. Plaintiffs, as personal representatives of Julia's estate, have no factual, legal, or good-faith basis to even allege in a conclusory manner that Julia suffered such "economic losses" as a result of intentional discrimination in violation of the RA. She was not dismissed, or expelled from JU. There are no facts alleged to suggest that Julia's academic ineligibility in September 2021 was permanent, or would even prevent her from being on the cross-country team for the remainder of the semester; let alone for the duration of her undergraduate program. Nor are there any facts to support that being on a cross-country team has any relationship to the value of any college degree or potential future earnings. There is no violation of the RA that could possibly have caused Julia to incur such "losses."

Count I, the answer is only a resounding "no." The framework of damages under §

504 is analogous to remedies under contract law. *Id.* Just as punitive, emotional

distress, and other "special" damages are not generally compensable in contract, they

are not awardable under the Rehabilitation Act. *Id.* at 1570-72. The gravamen of this

type of action is protection against disability discrimination, not the special,

speculative, and improvable relief sought by Plaintiffs, which stem, and can only stem,

from Julia's suicide.

For the foregoing reasons, Plaintiffs have failed to state a claim under the RA

and Count I should be dismissed with prejudice.

## III.    Plaintiffs Fail to Plausibly Allege Discrimination Under Title IX.

Within Count II, Plaintiffs assert that "[t]he [unidentified] foregoing allegations

establish that JU excluded Julia from full participation in and from the full benefits of

participating in JU's cross-county [sic] team on the basis of sex in violation of Title

IX[.]" [DE 32 at ¶ 48]. This vague averment is a legal conclusion and insufficient to

plausibly allege a Title IX claim; it is also frivolous.

Title IX provides that "[n]o person…shall, on the basis of sex, be excluded from

participation in, be denied the benefits of, or be subjected to discrimination under any

education program or activity receiving Federal financial assistance." 20 U.S.C. §

1681(a). Even the most favorable reading of the SAC would not reveal any factual

allegations sufficient to plausibly state any *prima facie* claim under Title IX. The only

allegations offered within Count II are pure legal conclusions. [DE 32 at ¶¶ 47-52].

Plaintiffs do not allege any facts to support their contention that "JU excluded Julia

from full participation in and from the full benefits of participating in JU's cross-country team on the basis of sex in violation of Title IX." Nor are there any facts that plausibly show that JU did not take "corrective action to remedy the discrimination Julia was subjected to." Plaintiffs do not even identify any action taken against her by Grigg or JU that relates specifically to Julia's sex in any respect.

The SAC may be an amended pleading, but that does not present Plaintiffs with either the excuse or ability to completely contradict what they pled in their Amended Complaint [DE 3], or what Julia herself stated was the reason she was no longer able to be a member of the women's cross-country team. Specifically, the Amended Complaint contains a verbatim copy of an email *from Julia* that unequivocally sets forth the non-discriminatory reasons she was released from the cross-country team. [DE 3 at ¶ 43]. This email, titled "Academic eligibility," was sent *by Julia* to JU's Athletic Director on October 18, 2021, shortly after she was notified that she could no longer continue as a member of the team,[7] and states:

> Monday, October 18, 2021 12:32 PM
> **To:** Ricker-Gilbert, Alex <aricker1@ju.edu>
> **Subject: <u>Academic eligibility</u>**
>
> Hello -
> I hope you're having a good morning. I was more than heartbroken to learn that **<u>I am no longer able to be on the track team, because my GPA is too low and I'm not fast enough to compete at this level.</u>** My coach knew my times when he recruited me to come to JU and he knew about my grades at UPike. I am not the slowest one on the team. I understand that he thinks that I'm not learning and that I can be difficult to work with. I have learning disabilities and due to that disability have a hard time following directions. I show up to practice every day on time with a smile. I help my teammates when they need. **<u>At the end of the day I understand I'm not going to be a big point scorer</u>** but I have improved and everyone has a role-play on a team. I'm a walk-on so its not about the money. I just don't know where to go from here. I rely on

---

[7] *See id.*; *see also* [DE 32 at ¶¶ 29-30].

the athletic academic help to do well. I would like to stay and **work on improving my grades.** I just am not able to do it myself. I'm looking for advice on how to proceed.

Sincerely,
Julia

[DE 3 at ¶ 42] (emphasis added).

In her own words, Julia clearly understood – and represented – that she was no longer on JU's cross-country team because of academic performance and athletic performances. She <u>does not</u> remotely reference or suggest that the decision was in any way related to her sex or an act of sex-discrimination. Nor does Julia mention anything about Grigg's alleged conduct, or even suggest that she was mistreated in any way.

Plaintiffs attempt to now allege – in an entirely vague and conclusory manner – that Julia was dismissed "from the cross-country team in retaliation for her complaints" is not only "new" – it is an unconscionable departure from, and irreconcilable contradiction of, Plaintiffs' previous pleading. By virtue of Julia's own account, it is not grounded in any good-faith basis or by any existing evidence.

## V.   Plaintiffs' Attempted Claim For Negligence (Count VI) Is Meritless.[8]

In Count VI, Plaintiffs attempt to create and allege a cause of action for negligence against JU. Regardless of how many different "sources of duty" they allege, what they allege, or how convoluted or complicated they may try to make the issues seem, the questions at issue involve simple matters of law. Moreover, the answers to those questions, are well-established and long-standing. As tragic, and unfortunate, as

---

[8] As pled, Count VI actually seeks to allege negligent infliction of emotional distress (NIED), a different tort that does not exist under, and is not recognized by, Florida law. *Gault v. U.S.*, 2021 U.S. Dist. LEXIS 172175, *13 (N.D. Fla. July 22, 2021) (quote and cite omitted), *adopted*, 2021 U.S. Dist. LEXIS 170826 (N.D. Fla. Sept. 9, 2021).

Julia's suicide is, a square peg does not fit through a round hole; as much as Julia's parents may want to blame someone, anyone, for their daughter's death, that simply is not possible in this case. Plaintiffs' attempt to create a claim for negligence against JU is frivolous. As a matter of law and as a matter of fact, no possible negligence claim exists against JU, and Count VI must be dismissed with prejudice.

### A. Plaintiffs' Negligence Claim Cannot Overcome Florida's Impact Rule.

Under Florida's impact rule, a claim for mental or emotional damages caused by a defendant's negligence is barred unless: (1) the plaintiff sustained a physical impact from an external source; (2) the claim arises from a situation in which the "impact" requirement is relaxed and the plaintiff manifests a significant discernible physical injury or illness as a result of the emotional trauma; or (3) one of the narrow exceptions to the impact rule applies rendering the rule inapplicable. *Fla. Dep't of Corr. v. Abril*, 969 So. 2d 201, 206 (Fla. 2007); *Willis v. Gami Golden Glades, LLC*, 967 So. 2d 846, 850 (Fla. 2007); *Gracey v. Eaker*, 837 So. 2d 348, 355 (Fla. 2002).[9] Otherwise, "before a plaintiff can recover damages for emotional distress caused by the negligence of another, the emotional distress suffered must flow from physical injuries the plaintiff sustained in an impact." *Abril*, 969 So. 2d at 206 (quoting *R.J. v. Humana of Fla., Inc.*, 652 So. 2d 360, 362 (Fla. 1995)).

Here, Plaintiffs do not attempt to allege, either factually or in a conclusory manner, directly or indirectly, that JU or Grigg directly or indirectly caused any

---

[9] "[T]he underlying basis for the [impact] rule is that allowing recovery for injuries resulting from purely emotional distress would open the floodgates for fictitious or speculative claims." *Elliott v. Elliott*, 58 So. 3d 878, 881 (Fla. Dist. Ct. App. 2011) (quoting *Gracey*, 837 So. 2d at 355).

physical injury or physical contact to Julia or her property. *See* [DE 32]; *see e.g.*, *R.J.*, 652 So. 2d at 364 (holding that "hypertension, pain and suffering, mental anguish, loss of capacity for the enjoyment of life, and the reasonable expense for medical care and attention" are "intangible, mental injuries [that] are insufficient to meet the physical injury required under the impact rule"). "A physical symptom is not equivalent to a physical injury or illness, let alone a significant discernible physical injury as *Champion* [*v. Gray*, 478 So. 2d 17 (Fla. 1985)] requires." *Faurote v. United States*, 2018 U.S. Dist. LEXIS 116982, *9 (M.D. Fla. July 13, 2018) (internal quotation marks and other citations omitted); *see also Langbehn v. Pub. Health Tr. of Miami-Dade County*, 661 F. Supp. 2d 1326, 1341 (S.D. Fla. 2009) (holding that the conclusory allegation that the plaintiffs suffered "physical injury" was "devoid of any supporting facts so as to survive a motion to dismiss").

There are simply no allegations of a "touching" or impact in the SAC.

Under Florida law, suicide is an unforeseeable, intervening cause, that precludes JU from negligence liability. *See e.g.*, *Est. of Brennan v. Church of Scientology Flag Serv. Org., Inc.*, 832 F. Supp. 2d 1370, 1381-82 (M.D. Fla. 2011), *aff'd sub nom. Est. of Brennan ex rel. Britton v. Church of Scientology Flag Serv. Org., Inc.*, 490 F. App'x 229 (11th Cir. 2012); *Wyke v. Polk Cnty. Sch. Bd.*, 129 F.3d 560, 574 (11th Cir. 1997) (recognizing general rule that absent some type of custodial relationship, one cannot be held liable for the suicide of another) (citing *Paddock v. Chacko*, 522 So. 2d 410, 416 (Fla. Dist. Ct. App. 1988)). The underlying rationale for this general rule is that suicide

constitutes an independent, intervening cause, which is not ordinarily foreseeable. *Wyke*, 129 F.3d 560 (cites omitted).

There is <u>no law</u> that supports Plaintiffs' attempt to claim negligence under any of the purported "duties" listed in Count VI. No court applying Florida law has ever held that a college or university was, or could even potentially be, liable for an adult student's suicide – and especially not based on the numerous "duties" that Plaintiffs conclude in the SAC as the basis of their claim(s). To be certain, Plaintiffs do <u>not</u> allege that Grigg caused any physical harm to Julia, or that that any physical "touching" occurred. *See* [DE 32]. Instead, Plaintiffs allege that Grigg's words to Julia purportedly caused her emotional distress, and/or discriminated against her. *Id.*; *see also*, *id.* at ¶¶ 54-56. There are no allegations, claims or causes of action alleged in the SAC against JU for negligent hiring, negligent supervision, or negligent retention.[10] Notwithstanding, it remains that under Florida law, there is no legal basis, claim, or remedy, that can be brought against JU based on Grigg's alleged negligence or his alleged intentional infliction of emotional distress.

First, not only must a plaintiff sufficiently plead a claim for negligent hiring, supervision, or negligent retention, Florida law requires that "the underlying wrong

---

[10]    For example: "Negligent retention occurs when, 'during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicate his unfitness, and the employer fails to take further action such as investigation, discharge, or reassignment." *Nolan v. Cent. Modular Sys.,* 2009 U.S. Dist. LEXIS 136944, at *9 (M.D. Fla. Sept. 10, 2009) (quoting *Watson,* 552 So. 2d at 1148). "Negligent supervision occurs when an employer knows or has reason to know that it is necessary to control an employee to prevent the employee from intentionally harming others, the employer knows or has reason to know that he has the ability to control his employee, and the employer knows or should know the necessity of such control." *Id.* at *9-10 (citing *Mallory v. O'Neil*, 69 So. 2d 313 (Fla. 1954)).

allegedly committed by an employee…must be based on an injury resulting from a tort which is recognized under common law." *Scelta v. Delicatessen Support Servs., Inc.*, 57 F. Supp. 2d 1327, 1348 (M.D. Fla. 1999). It is well-established that Florida does not recognize common law torts or claims for discrimination, harassment, sexual harassment, retaliation, or "violation of privacy." *Briseus v. JPMorgan Chase Bank*, 2018 U.S. Dist. LEXIS 124817, at *8-9 (S.D. Fla. July 24, 2018) (granting motion to dismiss unspecified claim for discrimination, stating "[t]o the extent [p]laintiff attempts to state a claim for discrimination under the common law, Florida does not recognize such claims as they are a creature of statute."); *Scelta*, 57 F. Supp. 2d at 1348 (dismissing negligence claims because "Florida law does not recognize a common law claim of sexual harassment as an independent tort."); *see also Reillo v. Alternate Health USA, Inc.*, 2020 U.S. Dist. LEXIS 212049, at *4-10 (M.D. Fla. Nov. 13, 2020) (Hon. M. Howard) (granting summary judgment, *sua sponte,* on negligence claims involving alleged sexual assault of the plaintiff by the defendant's board member). As a result, based on the allegations in the SAC, there is no underlying common law tort based on Grigg's alleged "negligent" conduct, nor purported discriminatory conduct. *Id.*

Second, to the extent Plaintiffs accuse Grigg of intentional conduct, such in their insufficient claim for IIED, under Florida law, there still is no cognizable claim that can be brought against JU or for which it may be liable to Julia's estate. Claims for negligent retention, supervision, or hiring "must be based on injuries stemming from a recognized common law tort, and Florida does not recognize an independent tort claim premised on verbal abuse or harassment." *Reillo*, 2020 U.S. Dist. LEXIS 212049

at *27-28 (citing *Perry v. Walmart, Inc.*, 2020 U.S. Dist. LEXIS 41210, *42-43 (M.D. Fla. Mar. 10, 2020)). The allegations in the SAC, do not, as a matter of law, plausibly state a claim for intentional infliction of emotional distress. As a result, JU cannot be held vicariously liable. *See id.* at n.11 ("Reillo's allegations, even if true, are insufficient to state a claim for intentional infliction of emotional distress, so she cannot rely on IIED as the requisite underlying tort");[11] *see also Freese v. Wuesthoff Health Sys.*, 2006 U.S. Dist. LEXIS 31784, *32 (M.D. Fla. May 19, 2006) (dismissing negligence claims against employer as "Freese has alleged neither physical injury nor physical impact, and thus her negligence complaints must be dismissed on this ground as well."); *Perez v. Pavex Corp.*, 2002 U.S. Dist. LEXIS 21871 (M.D. Fla. Oct. 18, 2002) (claims for negligent hiring, supervision and retention dismissed where plaintiffs alleged damages as a result of defendant's failure to maintain workplace free of discrimination, harassment and retaliation, but failed to allege injury as a result of physical impact).

Finally, to the extent Plaintiffs reference Florida's Wrongful Death Act in the "WHEREFORE" paragraph immediately following Paragraph 56 of the SAC, any request for emotional losses from Plaintiffs must be dismissed, denied, and/or stricken. Plaintiffs do not allege a wrongful death claim, and have omitted it from their SAC. The Wrongful Death Act ("Act") applies when a person dies from harm caused by another person. *Sheffield v. R.J. Reynolds Tobacco Co.*, 329 So. 3d 114, 120 (Fla. 2021);

---

[11] Notably, in *Reillo*, and unlike the facts in this case, the plaintiff's supervisor allegedly touched and tried to forcibly kiss the plaintiff. *Id.* at *16. In other words, there was physical contact in *Reillo*, and in this case, there is none.

*see* Fla. Stat. § 768.19. For the reasons set forth above, Plaintiffs have not - and cannot - allege that Julia's death was caused, in any way, by either JU or Grigg.

They also lack standing to pursue any personal relief for their own purported emotional loss stemming from Julia's suicide. Under Florida's Survival Action Statute, Fla. Stat. § 46.021, the Pernsteiners, as personal representatives, are only allowed to "stand in the decedent's shoes and recover compensation for damages that accrued while the decedent was still alive[.]" *Harris v. R.J. Reynolds Tobacco Co.*, 383 F. Supp. 3d 1315, 1324 (M.D. Fla. 2019). To the extent they argue that they are able to seek remedies for themselves, or anyone else, then that only underscores their extensive pleading deficiencies in the SAC.

## CONCLUSION

WHEREFORE, Defendant JU respectfully moves the Honorable Court to issue an Order: (i) granting this Motion; (ii) dismissing all counts against JU *with prejudice*; (iii) entering full and final judgment in favor of Defendant JU against Plaintiffs; and (iv) granting or awarding any further relief in Defendant JU's favor or otherwise consistent with this Motion as the Court deems necessary and appropriate.

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 3.1.(g)

Undersigned counsel for Defendants certifies that he conferred with counsel for Plaintiffs regarding the relief requested in this Motion. Plaintiffs oppose the relief requested herein.

Respectfully submitted this 26th day of July, 2023.

JACKSON LEWIS P.C.
501 Riverside Avenue, Suite 902
Jacksonville, FL  32202
Telephone: (904) 638-2655
Facsimile: (904) 638-2656

*/s/ B. Tyler White*
B. Tyler White
Florida Bar No. 0038213
tyler.white@jacksonlewis.com
Todd R. Dobry
Florida Bar No. 109081
todd.dobry@jacksonlewis.com

-and-

GARGANESE, WEISS, D'AGRESTA &
SALZMAN, P.A.
111 N Orange Ave, Ste 2000
Orlando, FL 32801-2327
Jeffrey Scott Weiss
Florida Bar No. 750565
jweiss@orlandolaw.net
Erin J. O'Leary
Florida Bar No. 1510
eoleary@orlandolaw.net
dsambol@orlandolaw.net

*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 26th day of July, 2023, a true and correct copy of the foregoing has been filed with the Court by using the CM/ECF system and a copy will also be sent via e-mail to:

Robert F. Spohrer, Esquire
Spohrer & Dodd
76 S. Laura Street, Suite 1701
Jacksonville, FL  32202
Telephone:  (904) 309-6500
Email: rspohrer@sdlitigation.com
        jheape@sdlitigation.com
        eservice@sdlitigation.com

*Attorneys for Plaintiffs*

John S. Mills
Bishop & Mills, PLLC
510 North Julia Street
Jacksonville, FL 32202
Telephone:  (904) 598-0034
Email: jmills@bishopmills.com

*Attorneys for Plaintiffs*

*/s/ B. Tyler White*
Attorney